**A. O. STROUD, Appellant,**

v.

**TEMPLE LUMBER COMPANY, Appellee.**

No. 5077.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 22, 1955.

Rehearing Denied Nov. 30, 1955.

Faver & Barnes, Jasper, for appellant.

Blades, Kennerly & Whitworth, Houston, Minton & Minton, Hemphill, for appellee.

R. L. MURRAY, Justice.

Temple Lumber Company, the appellee, brought suit in trespass to try title in the district court of Sabine County against A. O. Stroud, the appellant, and others. Suit was for title to and possession of 556.3 acres in the G. C. & S. F. Ry. Co., Section 14, in Sabine County. The appellant and the other defendants in a joint answer disclaimed as to all of the 556.3 acre tract sued for, except a specific tract of 20 acres therein, and as to such tract they pleaded not guilty and also specially pleaded the statutes of limitation of three years, Vernon's Ann.Civ.St. art. 5507, five years, art. 5509, and ten years, art. 5510.

At the conclusion of all the evidence, Temple Lumber Company filed its motion for instructed verdict. After argument on such motion, appellant asked for leave to file a trial amendment, and also moved the court to permit him to introduce additional testimony and evidence. The trial court refused both the motion and request for leave to file the trial amendment, and granted appellee's motion for instructed verdict. Judgment on such verdict, and on the disclaimers, was rendered in favor of appellee. Appellant A. O. Stroud has perfected his appeal from such judgment.

The following are the grounds set forth in the appellee's motion for instructed verdict:

### 1.

"Because this plaintiff has introduced in evidence a chain of title and title instruments showing title in itself to the land in controversy from the sovereignty of the soil.

### 2.

Because defendants have shown no record title in themselves to the land in controversy or any part or portion thereof.

### 3.

Because the defendants have shown no title whatsoever to the land in controversy or any part or portion thereof.

### 4.

Because the defendants have failed to introduce sufficient evidence to show and establish title in themselves to the land in controversy, or any part or portion thereof, by adverse possession under the three year statute of limitation of the State of Texas and the evidence in the case does not raise an issue to be submitted to the jury under the three year statute of limitation as pleaded by the said defendants.

### 5.

Because the defendants have failed to introduce sufficient evidence to show and establish title in themselves to the land in controversy, or any portion thereof, by adverse possession under the five year statute of limitation of the State of Texas and the evidence in the case does not raise an issue to be submitted to the jury under the five year statute of limitation as pleaded by said defendants.

### 6.

Because the defendants have failed to introduce sufficient evidence to show and establish title in themselves to the land in controversy, or any part or portion thereof, by adverse possession under the ten year statute of limitation of the, State of Texas and the evidence in the case does not raise an issue to be submitted to the jury under the ten year statute of limitation as pleaded by said defendants.

### 7.

Because the testimony of the defendant, A. O. Stroud, is to the effect that at the time he first went on a portion of the land in controversy and erected a house and other improvements thereon he did so thinking and believing that the land he so entered upon and occupied was vacant land owned by the State of Texas and that he continued to occupy, possess, use and enjoy such land under the belief that it was vacant land owned by the State of Texas until the time of the trial of the case of W. E. Stroud, Et Ux vs. Temple Lumber Company in May, 1951, and because of the above and foregoing facts the statutes of limitation, as a matter of law, could not and did not commence to run in favor of defendants and against plaintiff, the owner of the land in controversy, until May, 1951. This suit having been filed on March 18, 1952, no statutory period of limitation as pleaded by defendants could have run so as to raise an issue to be submitted to the jury under the pleas of title by adverse possession under the limitation statutes pleaded by the defendants.

### 8.

Because the defendants have disclaimed as to all the land described in plaintiff's Original Petition except a specific twenty (20) acre tract thereof particularly described in the First Amended Original Answer of defendants and there is no evidence that defendants have had any actual occupancy and possession of all of such twenty (20) acre tract for a period of ten or more years or that they have all of such twenty (20) acre tract enclosed and under an enclosure but, to the contrary, the undisputed evidence shows that defendants have not had actual possession of such tract for a period of ten or more consecutive years and that defendants have not had all of such tract enclosed and under an enclosure.

The undisputed evidence shows that at all times since 1932 to the present time the plaintiff, through tenants, has been in possession of a portion or portions of the land described in plaintiff's Original Petition, while holding title to and claiming such land under a duly recorded deed and deeds describing such land, and therefore such possession so held by plaintiff, through its tenants, constituted constructive possession by plaintiff of all of the land described in its said Petition except such as was in the actual possession of and under the enclosure or enclosures of defendants and such possession by plaintiff restricted defendants to their actual possession and enclosure or enclosures.

9.

Because the undisputed evidence shows that plaintiff, either in person or by timber vendees, made entry upon the land described in its original petition and cut timber therefrom at such times and on such occasions and dates as to prevent the ten year statute of limitation from running in defendants favor for ten or more consecutive years to any more or such land than defendants had in their actual possession and under their enclosure or enclosures.

10.

Because there are no pleadings and there is no evidence in the case upon which to base an issue or issues to be submitted to the jury as to the adverse possession of defendants with respect to their actual occupancy and possession and enclosure or enclosures and there are no pleadings and no proof or evidence upon which to base, or which would support, a verdict and judgment in favor of defendants for the land actually occupied, possessed and enclosed by them.

11.

Because the evidence shows that the defendant, A. O. Stroud, executed an acknowledgment of tenancy in favor of plaintiff on May 7, 1941, by the terms, language and provisions of which he acknowledged himself to be the tenant of plaintiff as to and on the entire G.C. & S.F. R. Co.

Survey, Section 14, in Sabine County and the evidence offered by defendants in an effort and attempt to show that defendant, A. O. Stroud, did not in fact execute such instrument is insufficient to establish that such instrument is a forgery as to said A. O. Stroud because the evidence is likewise insufficient to raise an issue of forgery of said instrument to be submitted to the jury. Therefore, the evidence in the case, as a matter of law, establishes that defendants, A. O. Stroud and wife, have been in possession of the land occupied by them as a tenant of plaintiff since May 7, 1941, on which date they did not have title, limitation or otherwise, to such land.

12.

Because the evidence on the essential facts in this case is such that reasonable minds cannot differ as to its verity and the inference to be drawn therefrom and the only inference to be drawn from such evidence, when proper verity is accorded thereto, is that the defendants have not matured title to the twenty (20) acre tract described in their Amended Answer by adverse possession under the ten year statute of limitation of the State of Texas. Therefore, the matter becomes a question of law for the court to pass on and the court should instruct the jury to return a verdict in favor of the plaintiff.

13.

Because under the undisputed evidence in the case the constructive possession of plaintiff through tenants, of the land sued for by it has been such since defendant's entry on to a portion of such land that defendants could not have had adverse possession for ten or more years of any of such land except that portion thereof as has been in their actual possession and under their enclosure or enclosures and such portion as has been in their actual possession and under their enclosure or enclosures not being described either by their pleadings or by the evidence no issue can be submitted to the jury with respect thereto and no judgment could be rendered in favor of defendants with respect thereto.

Therefore, the plaintiff is entitled to judgment and the court should instruct the jury to return a verdict in favor of plaintiff."

Appellant brings his appeal upon three points of error, which are as follows:

### First Point

"The error of the trial court in refusing to permit defendant to file his proffered trial amendment changing the description of the land he claimed from the twenty acres described in his original pleadings to the three-tenths acre that was actually inclosed as was first revealed by the testimony of plaintiff's last rebuttal witness, when it was the evidence introduced by plaintiff during the trial that revealed that defendant was limited to land actually inclosed.

### Second Point

The error of the trial court in refusing to allow defendant to resume the witness stand, before the court in the absence of the jury, for the purpose of clarifying his position and showing the court why he was entitled to his proffered trial amendment.

### Third Point

The error of the trial court in refusing to allow defendant to resume the witness stand to show the Court that it was during, and because of, the cross-examination of him by plaintiff's attorney that defendant first believed that he was claiming vacant land that belonged to the State, when it was *exclusively* upon the ground that defendant thought he was claiming State land that the trial court granted plaintiff's motion for an instructed verdict as related to the three-tenths acre."

The evidence showed that the appellee, Temple Lumber Company, held legal record title to all of the 556.3 acres out of the G.C. & S.F. Survey No. 14 sued for. The appellant Stroud, having disclaimed as to all of the land sued for except the 20 acre tract which he was claiming under the 10-year statute of limitation, introduced evidence to show that in 1937 he went on the land, constructed a house, built an in-

closure on a portion of the 20 acres claimed by him; that he and his family continuously resided in such house and used such inclosure from 1937 to the time of the trial in November, 1954, and at the time of the trial was still using it as a home.

The appellee introduced evidence, including various written acknowledgments of tenancy by various parties, showing that the appellee, the record title owner, had been in such constructive possession of various portions of the survey during the claimed limitation period that the appellant Stroud under such evidence would be restricted in his recovery of land, if any recovery should be made by him, to that portion of the land actually inclosed by him. This position of the appellee is sustained by many authorities, beginning with Evitts v. Roth, 61 Tex. 81 and continued through Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912. The appellant concedes in his brief that this is true and so argued to the trial court in his motion for leave to file his trial amendment. The appellant's pleading did not allege any description of the land actually inclosed by him. There was some evidence by a witness in behalf of appellee, a surveyor, that he had surveyed the inclosure of the appellant and that it contained only .3 of an acre. After the argument on appellee's motion for instructed verdict was heard, appellant then asked leave to file his trial amendment describing his inclosure, together with the right to adduce additional evidence proving the description of the land he actually had inclosed and used. The trial court refused leave to file the trial amendment and to present the evidence appellant might have had in regard to such description. No evidence was heard on the motion for leave, but the statement of facts reflects that an extended argument was presented by both sides on such motion. The appellee presented nothing to the court to indicate that the filing of such a trial amendment and introduction of further testimony thereon would prejudice it in maintaining its action or defense on the merits of such claim of limitation as to the three-tenths of an acre inclosed. Ordinarily it is true

that the question of permitting a litigant to file a trial amendment or hear additional evidence after both parties have rested is a matter addressed to the discretion of the trial court and the trial court's action will not be disturbed on appeal, unless a clear abuse of that discretion is shown. When there is an abuse of such discretion, however, and such discretion is not exercised liberally in favor of the amendment in the interest of justice, the court's action will be reversed. Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605, by the Supreme Court, and cases cited in the opinion. In this case the trial had proceeded up through Wednesday, the day before Thanksgiving, when the argument was heard on appellee's motion for instructed verdict. The court recessed until the following Monday morning, at which time the appellant presented his trial amendment, including a description of his inclosure, and also offered evidence to show that the description was in fact a correct description of his inclosure. Since under the evidence then before the trial court the appellee's motion for instructed verdict should have been granted, and since there was ample evidence before the trial court regarding the appellant's use and occupancy of the inclosed portions of the land sued for, the court should have allowed him to file the amendment and introduce such brief evidence in order to avoid an instructed verdict against him. See: Fielder v. Houston Oil Co. of Texas, 208 S.W. 158 by the Commission of Appeals, judgment adopted by the Supreme Court. Appellant's first and second points are therefore sustained.

■■ The trial court indicated to the attorneys in the case, after argument was heard on the motion for instructed verdict, that he thought the law was against the appellant and that he ought to instruct a verdict against him because he had testified himself that when he went on the land claimed by him in this suit he did so believing that it was "vacant land belonging to the State of Texas." This question was raised in paragraph 7 of appellee's motion for instructed verdict. The appellant thereupon asked permission of the court to permit appellant to testify further and explain his testimony in that regard. The trial court refused this. The appellant, under his third point of error, maintains that he should have been permitted to testify and explain his testimony in regard to what he thought was meant by "vacant land." The appellee on appeal contends that appellant's testimony was plain and outspoken to the effect that he went on the land at first believing that it was vacant land owned by the State; and therefore was not claiming the land against all other persons and could not recover. Its position as to the law on this point is amply sustained by the authorities cited by it. Schleicher v. Gatlin, 85 Tex. 270, 20 S.W. 120; Smith v. Jones, 103 Tex. 632, 132 S.W. 469, 31 L.R.A.,N.S., 153. We disagree, however, with the application of the law to the facts as shown by this record. The appellant's pleading in which he claimed a 20 acre tract began a description of the land claimed as "being a part of Section 14, G.C. & S.F. Survey." Stroud, the appellant, was asked what prompted him "to go out there on this 20 acre tract in question" and he replied, "I checked the records down here in the County Clerk's office and it was 20 acres unknown." He then testified about clearing the land of timber, building a house, digging a well, putting a fence around his house and garden, getting married and raising a family there. He testified to his use of the property and the work he did upon it, and of his claim of the land as his own. His testimony upon direct examination covers some 14 pages in the statement of facts. On cross-examination he testified as follows:

By Mr. Whitworth:

"Q. Now, Mr. Stroud, at the beginning of your testimony you said that back in 1936 you went down to the County Clerk's office here in Hemphill and checked the records and found an unknown twenty acres. Now, did I understand your testimony? A. That is right. That is exactly right.

"Q. All right, sir. What records in the County Clerk's office did you check to find an unknown 20 acres? A. I didn't check it. I got a lady in there to check it. I wouldn't know one record from another one.

"Q. I thought you said awhile ago you checked the record and found an unknown 20 acres? A. I had it checked.

"Q. You had it checked? A. That is right.

"Q. Well, so far as what the record shows, you yourself don't know? A. I looked at it.

"Q. What record did you look at? A. Well, it was on Section 14.

"Q. I mean what book down there did you look at? A. Well, I couldn't remember back to '36 what —. That would be just like me asking you about something that happened out here fifteen years ago.

"Q. Don't you know, Mr. Stroud, there is not any book in the County Clerk's office that carries a list of or record of or refers to unknown land? A. Is that where we pay our poll taxes—our taxes down there?

"Q. Don't you know there is not any book down in the County Clerk's office that carries any such thing as a record of any unknown land? A. No; I don't know that.

"Q. You don't know that? A. No.

"Q. Can you tell me what book you looked at and saw any unknown 20 acres in it? A. No, I couldn't. It just said 20 acres unknown.

"Q. 20 acres unknown? A. That is right.

"Q. Now, you are right sure that was the County Clerk's office? A. Well, it was down here in the Sheriff's department—at the other end. I guess that is what you call it.

"Q. Did that show that that was State land? Is that what it showed? A. It showed on the G.C. & S.F. Section 14.

"Q. Well, did it show that it was State owned land—owned by the State of Texas? A. No. It just said 20 acres unknown.

"Q. 20 acres unknown. Well, did it describe that 20 acres that was unknown? A. No, it didn't.

"Q. How do you know you have gone out there and claimed the unknown 20 acres that you said you found down there? A. Well, I asked that fellow—that lady the same question. She said it could be anywhere on it.

"Q. Oh, I see. Now, what lady was that, Mr. Stroud? A. I don't remember who was in there in '36.

"Q. Well, now, you are coming up here and testifying on your oath before this Court and this jury that you went down in some office and asked some lady about some land and she found in a book 20 acres unknown on the G.C. & S.F. Now, I am asking you what was the name of that lady that pointed that out to you? A. Well, I don't remember. But Mr. McGown worked in there at that time.

"Q. Is that Mr. Dick McGown—N. H. McGown? A. No, sir.

"Q. What McGown was it? A. The one that held that office down there.

"Q. Well, he wasn't the one that pointed that out to you, was he? A. No. It was his secretary.

"Q. His secretary. And you don't know what kind of book it was in? A. No. It was in a large book.

"Q. Did it look like one of these? A. Well, I wouldn't say it looked just like that book; but it was one of the books they got down there.

"Q. You said you looked at it, did you? A. I looked at it.

"Q. Just what did it say? A. It just said 20 acres unknown.

"Q. 20 acres unknown? A. That is right.

"Q. 20 acres unknown where? A. It didn't say where. It just said on G.C. & S.F. Section 14.

"Q. G.C. & S.F. Section 14? A. That is right.

"Q. What prompted you—how come you to go down and look at that book? What prompted you to ask about that to start with? A. O.K. I got an Uncle that has been County Surveyor, I reckon, thirty years. He told me—and he told seven or eight—there is 20 acres here that don't belong to anybody; if you build on it, it is yours.

"Q. You mean he said it didn't belong to anybody? A. That is right.

"Q. That is, it was vacant land? A. It was vacant land.

"Q. Belonging to the State of Texas? A. Yes, sir.

"Q. You thought it was vacant land belonging to the State of Texas? A. That is right.

"Q. That is what you thought when you went there? A. That is right.

"Q. And that is the reason you went there; is that right? A. That is right.

"Q. Because you thought it was vacant land belonging to the State of Texas? A. Yes, sir. * * *

"Q. Now, Mr. Stroud, when is the first time, the very first time, that you found out that anybody other than the State of Texas was claiming to own that 20 acres of land that you testified you found out or thought to be State owned land? When was the first time you found out that somebody else was claiming it? A. When my brother had a suit up here with you all.

"Q. When your brother had a suit? A. Yes, sir.

"Q. That suit was tried back in May of about 1951, wasn't it? A. Yes, sir."
* * *

"Q. Mr. Stroud, you say the first time you knew or heard about anybody claiming this 20 acres that you are asserting claim to other than the State of Texas was at the time the suit of your brother against Temple Lumber Company was tried in this Court? That is what you said while ago, wasn't it? A. Yes, sir.

"Q. And that is the first time you heard that anybody other than the State of Texas was claiming this 20 acres of land? A. Yes, sir.

"Q. Now, that suit of your brother's was tried in May of 1951, wasn't it? A. That is right.

"Q. And that suit involved 160 acres of land on this same G.C. & S.F. Section 14, didn't it? A. Yes, sir."

The appellee contends here that this statement by him that he thought it was vacant land owned by the State of Texas was fatal to the appellant's claim of limitation in this suit. We do not so regard it. It is apparent from all of his testimony in that regard, taken as a whole, that the appellant as a witness for himself had no conception in his mind of the special meaning in law of the term "vacant land." It is apparent that to him the terms "owner unknown" and "vacant" amounted to the same thing. The definition of "vacant" in Webster's International Dictionary, and various other recognized dictionaries of the English language, is "without contents; not filled; empty; not filled or occupied by an incumbent." The same dictionary adds as another definition: "Law. Not granted away, as State lands." It is noted that he testified on direct examination that the land in question was a part of the G.C. & S.F. Survey No. 14, which indicates that if he had any knowledge about the matter at all he knew that the land had been granted by the State in order that it be known as G.C. & S.F. Survey No. 14, and was therefore still not owned by the State of Texas. When he, after a number of preliminary questions, answered the question, "You mean he said it did not belong to anybody?" "That is right." The answered the question, "That is, it was vacant land?" "It was vacant land." He was gradually led on by the questions of

Counsel to say "yes, sir" to the question "because you thought it was vacant land belonging to the State of Texas." It appears to us that the appellant, as a witness, was simply agreeing with an erroneous conclusion of law suggested to him in the questioning of Counsel. This testimony taken as a whole with the witness' previous direct testimony that he went on the land in that particular survey because its owner was unknown was sufficient to make a fact question for the jury as to whether he was claiming that land against all persons, and that this question should have been submitted to the jury. We do not think that it even required that the trial court re-open the case and permit the appellant to testify further in explanation of his statement in response to questions on cross-examination.

The appellee contends that the trial court was correct in all the matters complained of by the appellant and says in addition thereto that even if the trial court erred in refusing to permit the filing of the trial amendment and allowing additional testimony thereon, and in refusing to permit further testimony by the appellant as to what he believed about the true ownership of the land at the time he went on it, still it contends that the trial court properly instructed a verdict in its favor because the appellant executed a written acknowledgment of tenancy to the appellee of the entire G.C. & S.F. Survey No. 14 in 1941; it says the testimony in regard to the execution of this instrument, which was introduced in evidence, is of such a nature, when considered in its entirety, that reasonable minds cannot differ as to the verity of the evidence and the inference to be drawn therefrom; and that such evidence presented not a question of fact but one of law and that this evidence and inference was that the appellant had acknowledged tenancy to appellee in 1941, and that he did nothing to repudiate such tenancy until he did so by his testimony in another lawsuit between the appellee and his brother in 1951. It says that in view of such acknowledgment of tenancy the court should have instructed a verdict

as it did in its favor and the errors, if any, in regard to the refusal of the trial amendment and refusal of additional testimony were therefore harmless errors. If, in fact, the testimony in regard to the acknowledgment of tenancy by appellant Stroud was precise and undisputed, or was of such a nature that reasonable minds could not differ on such evidence and that reasonable minds must have agreed that Stroud did in fact execute such acknowledgment of tenancy, then the appellee is correct and the appellant could not have recovered title to the land he claimed or to the land which he inclosed no matter what findings the jury might have made in regard thereto if the proper issues had been submitted to it. The evidence on this point must, therefore, be examined and set forth here in detail. We take this statement almost in toto from the statement of the appellee under its third counter-point in the brief, with some additions thereto which we note in the record. The appellee introduced in evidence an acknowledgment of tenancy from A. O. Stroud to appellee Temple Lumber Company dated May 7, 1941, and covering the entire G.C. & S.F. Survey No. 14. The instrument was not acknowledged by Stroud before a notary public but it bore the signatures as witnesses of three persons: G. W. Alford, Jesse Byrum and Mack Bragg. Mr. Alford was dead at the time of trial. Mr. Bragg testified that he was a witness to the instrument and "there was a fellow supposed to have signed it but I don't know that it was A. O. Stroud." He would not say that he saw Stroud sign it. He was not certain about the purported signature of Stroud being Stroud's signature and further testified that all he could testify about the instrument was that it was his signature on it and he signed it as a witness. He did not see Byrum sign his name and he did not see Alford sign his name. Mr. Byrum did not testify. One of such witnesses, Mr. Alford, proved it up for registration before R. A. Smith, a notary public, who testified that he took Alford's acknowledgment as a witness to the instrument. The certificate of the Clerk of the County Court of Sabine County, attached to said

instrument, certifies that the instrument was filed for record in his office August 16, 1951. On the trial of the case appellant Stroud categorically denied that he had executed or signed the acknowledgment of tenancy and testified that his signature did not appear thereon. He admitted, however, that on the trial of the case of W. E. Stroud v. Temple Lumber Company in May, 1951, he testified as follows with respect to such acknowledgment of tenancy:

"Q. I show you an acknowledgment of tenancy, A. O. Stroud to the Temple Lumber Company, Defendant's Exhibit No. 2; It is dated the 7th day of May, 1941, and signed; is that your signature? A. I am not no handwriting specialist, but I don't believe it is.

"Q. Is that your signature there, do you think? A. I don't believe it is.

"Q. Do you recall executing an acknowledgment of tenancy to the Temple Lumber Company for the entire G.C. & S.F. Survey 14, containing 560 acres? A. Don't remember it.

"Q. You don't recall the execution of this instrument? A. No, sir.

"Q. Then you would say you did not sign that instrument? A. I don't remember it.

"Q. Now, Mr. Stroud, I want you to look at this instrument pretty closely. This is an acknowledgment of tenancy or tenacy contract between you and Temple Lumber Company, and I want you to look at that signature above that line there, and I want you to say whether or not that is your signature, and whether or not you signed that instrument? A. If I signed that, I don't remember it.

"Q. Well, does it look like your signature? Does it or doesn't it? A. Well, I can't tell anything much about it. The O is out and the S is out. It don't look like my signature.

"Q. It don't look like your signature? A. That is right.

"Q. Will you say that is your signature or that it is not? A. No, sir; I won't say.

"Q. You won't say one way or the other? A. No, sir."

In June, 1951, Minton & Minton, attorneys for Temple Lumber Company, wrote appellant a letter cancelling and terminating the contract of tenancy. Mr. Prudhomme, Vice President of Temple Lumber Company, received a letter signed A. O. Stroud, dated July, 1951, the substance of which was that as soon as Stroud could find some land he would move his house off the land. Mr. Prudhomme replied to that letter addressed to Stroud, dated July 21, 1951, asking him to let him know by August 18th unless he had been able to move his house before that time. A letter dated August 20, 1951, signed A. O. Stroud, was received by Mr. Prudhomme advising that Stroud had not been able to find any land and did not know when he would. Mr. Prudhomme wrote a letter to Stroud on August 30, 1951, stating that appellee did not wish to cause appellant any unnecessary inconvenience, but he would like to clear the matter up soon. Mrs. A. O. Stroud, wife of the appellant, wrote Mr. Goodrich, another official of the appellee company, and referred to Mr. Prudhomme's letter in which she requested Mr. Goodrich to help her. In response to such letter Mr. Goodrich wrote Mrs. Stroud that he had secured an extension of time of sixty days from September 1st in which they were to move the house.

Mr. Prudhomme testified, in substance, that a few days before July 21, 1951 appellant talked to him and wanted to buy some land where his house was and wanted to continue to stay there; that Stroud told him that he would move his house off the land as quickly as possible and that he did not in such conversation, either expressly or by implication, make any claim to the land where his house is located. Mr. Goodrich, an official of the appellee company, testified that some time after the trial of the W. E. Stroud case in 1951 Stroud came to his office and in a conver-

sation with him they discussed the notice Stroud had received asking him to remove his improvements from the land; that Stroud told him that he had received a letter from J. H. Minton advising that his lease had been cancelled and that he would have to remove his improvements and vacate the land, and that he wanted to execute a new tenancy acknowledgment or purchase the acreage where his house was.

The appellant denied that he had written any letters to the Company and testified that he had not authorized his wife to write any such letter to the Company and knew nothing about it; that he was working out of town for awhile and came home at irregular periods; that he saw one letter from the Company but did not read it and threw it into the fire. He admitted having a conversation with Mr. Prudhomme, but denied that there was any mention at all of the land in the conversation and said that they talked about him wanting to get his job back after he had been fired by the Company. He also denied ever having any conversation with Mr. Goodrich with reference to getting an extension of the lease contract or to buying any land where his house was.

John Zager testified that he cut ties for Temple Lumber Company on the G.C. & S.F. Survey No. 14 in 1945 and 1946 and Stroud worked for him on such job; that Stroud told him while they were working there that he did not own any land where his house was but that he leased it from Temple Lumber Company. Appellant denied having any such conversation with Zager.

■ We think this evidence is of such a nature as to raise a question of fact to be submitted to the jury whether Stroud executed the acknowledgment of tenancy to Temple Lumber Company. It is true that all of the course of conduct of the appellant as testified to by himself and the other witnesses raises a grave suspicion as to the correctness of his denial of execu-

tion of the instrument. It is certainly sufficient to sustain a finding of the jury that he did execute such acknowledgment of tenancy. We cannot say, however, that there is no evidence raising an issue as to whether he signed it, in view of his categorical denial on this trial and the weakness of the proof that he did sign it. Had the trial court submitted such an issue to the jury and the jury, by its verdict, had found that Stroud had not executed this acknowledgment the trial court would probably have been warranted in setting such verdict aside as being based on insufficient evidence, or in case of such a finding by the jury and a judgment thereon by the trial court in favor of Stroud, we would probably hold on appeal that such evidence was insufficient and would remand the case for a new trial. But we would not, we believe, be warranted in rendering judgment for Temple Lumber Company on such reversal. See: In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Choate v. San Antonio & A. P. Ry. Co., 90 Tex. 82, 36 S.W. 247, 37 S.W. 319. It seems incredible that, if Stroud had not executed such acknowledgment of tenancy in 1941 and the instrument had been shown to him while he was testifying in the suit of his brother with Temple Lumber Company in 1951, he would not have been able to deny it at that time, and would not have been content to testify that he could not say "yes" or "no", but simply could not remember signing such an instrument. It seems almost incredible that he would not have known of the letters written by his wife to Temple Lumber Company in regard to moving his house. Nevertheless, he did deny on this trial that he signed it and there was no direct evidence before the court by anyone that he did sign it. All of the evidence taken together requires that the trial court submit the case to the jury for determination, and it was error to instruct a verdict in favor of the appellee under those circumstances.

For the errors discussed, the judgment is reversed and the case is remanded for a new trial.