**W. F. McDANIEL et ux., Appellants,**

**v.**

**Lloyd WILLIAMS, Appellee.**

**No. 357.**

Court of Civil Appeals of Texas.

Tyler.

June 6, 1968.

Rehearing Denied June 27, 1968.

McCown, Sheehan & Dubuque, Louis T. Dubuque, Dumas, for appellants.

Richards & Ferguson, Floyd H. Richards, Dalhart, for appellee.

DUNAGAN, Chief Justice.

Appellants brought this suit in trespass to try title for the title and possession of a 67.6 acre tract of land out of the Robert McKinney Survey in Hartley County, Texas. Appellee's plea of ownership by virtue of the ten-year statute of limitation was sustained by the jury's answers to all issues, and judgment was entered for appellee based on the special issues. Appellants' primary contention is that there was no evidence to support the admission of Special Issue No. 1.[1]

The O. W. Logan Survey hereinafter mentioned lies south of, joins and is contiguous to the south line of the Robert McKinney Survey, both in Hartley County, Texas.

Appellee's father purchased the south half of the O. W. Logan Survey in 1943. Appellee and his father, working together, operated a stock farm on the south half of the Logan Survey and had the north half of the Logan Survey leased and used it for grass and grazing from 1943 until they purchased it. They claimed, to the north partition fence, leasehold estate, under a Mr. Berry from 1943 until they purchased the north half of the Logan Survey. The west half of the north half of the O. W. Logan Survey was conveyed to appellee, Lloyd Williams, and his brother, Bert Williams, by deed from John W. Bilton, et ux, dated June 19, 1946. The northeast quarter of the north half of the O. W. Logan Survey was conveyed to the father of appellee, H. T. Williams, by deed dated July 16, 1948. The southeast quarter of the north half of the O. W. Logan Survey was acquired by appellee, or his father, in a land trade from the Lasleys in July, 1949. In 1949 appellee conveyed all the property that had been taken in his name to his father, H. T. Williams. The land was then conveyed by H. T. Williams and his wife, mother and father of appellee, to appellee and his six brothers and sisters in 1957. Appellee then operated the entire farm, under an agreement and arrangement with his brothers and sisters, from 1957 to 1964, when his brothers and sisters conveyed all of their interest in the property to appellee.

Appellee testified that under the deeds where he acquired the north half of the O. W. Logan Survey, it was supposed to include, in the original deeds, everything over to the fence line. A survey made by Oliver Noel revealed that the fence line, on the north of the O. W. Logan Survey, was constructed 67.6 acres north of the north line of the O. W. Logan Survey. Appellee lived on the south half of the O. W. Logan Survey with his parents and helped operate the stock farm. There was no fence at or near the north line of the O. W. Logan Survey, south of the partition fence. The north half of the O. W. Logan Survey, including the 67.6 acre strip of land, was in grass at the time that appellee purchased the south half

1. "Do you find from a preponderance of the evidence that the defendant, Lloyd Williams, and those under whom he claims, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenents, have held peaceable and adverse possession, of the 67.6 acres of land in controversy, cultivating or using or enjoying the same for any period of ten consecutive years prior to June 18, 1965?

"A n s w e r: 'Yes' or 'No.'

"ANSWER: ___Yes___ "

of said survey in 1943. There was then a fence, running around the improvements, at the southeast part of the O. W. Logan Survey, beginning at the east line and running west for about a quarter of a mile then north to the center of O. W. Logan Survey, thence west to the west line of the O. W. Logan Survey. The quarter-mile wide neck of land that connected the improvements to the north half of the O. W. Logan Survey and the 67.6 acres was fenced off at the south line of the north half of said survey. Appellee, while he owned it and his father while he owned it, and appellee and his father when they were operating it together, grazed cattle on the north half of the Logan Survey and on the 67.6 acre strip of land in dispute every year, without omitting any year, from 1943 to 1964, when appellee leased the strip of land in dispute to Jack Shelley. There was not any year during that period of time that the appellee or his father did not run cattle on the disputed strip of land, which was up to the north fence on the tract. The entire north half of the O. W. Logan Survey, and including the 67.6 acre tract of land in dispute, was entirely fenced on all sides, with a substantial barbed wire fence from 1942 or 1943 to 1964. The north fence, being the partition fence, was located in its present location for at least 30 years.

Appellee and his father worked on the north partition fence and repaired it all of the time. They had cattle grazing on it at all times from 1943 until 1964. There was a substantial wire fence all the way around the pasture that enclosed the 67.6 acre tract of land. The fence on the east side of the north half of the Logan Survey and that extended all across the east side of the disputed tract of land was built by appellee and his father. Appellee added a fourth wire to the north fence on the north of the 67.6 acre tract of land in 1943 or 1944. The partition fence through the center of the O. W. Lo-

gan Survey was rebuilt by appellee. It was also a four-barbed-wire fence.

■ This point has required us to examine the entire record, which we have done, and find the evidence to be ample to support the submission of Special Issue No. 1. We think our holding is supported by Allison v. Groppenbacher, 142 S.W.2d 528, (Tex.Civ.App., 1940, El Paso, writ ref.); Lone Star Steel Company v. Owens, 302 S.W.2d 213, (Tex.Civ.App., Texarkana, 1957, writ ref., n. r. e.); Wilson v. Rogers, 343 S.W.2d 309, (Tex.Civ.App., Houston, 1961, writ ref., n. r. e.); Sanders v. Worthington, 382 S.W.2d 910, (Tex.Sup., 1964).

By their remaining points, appellants contend that the ownership of the minerals in and under the disputed tract of land is vested in them by virtue of an oil and gas lease executed on June 5, 1951, by appellants to Standard Oil Company of Texas. They argue that by virtue of this oil and gas lease the minerals were severed from the surface estate and therefor, if the entire judgment is not reversed and rendered, the judgment insofar as the minerals should be reversed and rendered for appellants. This contention is without merit and is overruled.

■ It is a well established rule of law in this state that an adverse entry upon the surface of land extends downward and includes title to underlying minerals where at time of entry there has been no severance of mineral estate. Broughton v. Humble Oil & Refining Co., 105 S.W.2d 480, (Tex. Civ.App., El Paso, 1937, writ ref.); Cargill v. Buie, 343 S.W.2d 746, (Tex.Civ.App., Texarkana, 1960, writ ref., n. r. e); Watkins v. Certain-Teed Products Corporation, 231 S.W.2d 981, (Tex.Civ.App., Amarillo, 1950, n. w. h.).

The judgment of the trial court is affirmed.