**Joe B. GULLEY Jr. and Imelda Gulley, Appellants,**

v.

**Wirt DAVIS, II, individually, Catherine B. Taylor, individually, Valley Oak Investments, L.P., Camilla R. Blaffer and Texas Gulf Bank, N.A., Co–Trustees of The Camilla B. Mallard Trust, Joan B. Johnson and Bessemer Trust Co., Co–Trustees of The Joan B. Johnson Trust, and PDB Properties, Ltd., Appellees.**

No. 01–08–00572–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 1, 2010.

Joe B. Gulley III, Golden & Owens, Randall C. Owens, Houston, TX, Vincent

L. Marable, III, Paul Webb, P.C., Wharton, TX, for Appellants.

F. Franklin Honea, J. Robert Beatty, Locke, Liddell & Sapp, Dallas, TX, John Zukowski, Zukowski, Bresenhan & Sinex, Houston, TX, Shayne D. Moses, Moses, Palmer & Howell, Fort Worth, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION ON REHEARING

ELSA ALCALA, Justice.

Appellants, Joe B. Gulley Jr. and Imelda Gulley ("the Gulleys"), have filed a motion for rehearing. We deny rehearing but withdraw our opinion and judgment of April 14, 2010 and substitute this opinion and judgment in their place.

In this case involving adverse possession of the mineral rights in a 52–acre tract, the Gulleys appeal from a summary judgment in favor of appellees, Wirt Davis, II, individually; Catherine B. Taylor, individually; Valley Oak Investments, L.P.; Camilla R. Blaffer and Texas Gulf Bank, N.A., co-trustees of the Camilla B. Mallard Trust; Joan B. Johnson and Bessemer Trust Co., co-trustees of the Joan B. Johnson Trust; and PDB Properties, Ltd. (collectively, "the Davises"). In three issues, the Gulleys assert the trial court erred by excluding a deed and six affidavits from summary-judgment evidence and by granting summary judgment in favor of the Davises. We conclude the error, if any, in excluding the deed is not reversible error and any error in excluding the affidavits is waived. We further conclude the trial court properly granted summary judgment on the grounds that the evidence established as a matter of law the possession in this case was not exclusive of and adverse to the title owner of the property. We affirm.

## Background

In 1835, the State of Coahuila and Texas granted one league of land in Polk County, Texas to Lowrey T. Hampton ("the League"), and, through various conveyances, George Davis acquired title to all the real property within the League. This case concerns a dispute over ownership of the minerals in a 52–acre tract located within the League. The Davises claim to be the successors in interest to George Davis and his wife, Camilla Davis. The Gulleys claim to be the successors in interest to William and Rosia Moore.

In the 20 years between 1872 and 1892, George Moore, William's father, was the tenant of George Davis. In 1872, George Davis leased the entire League to George Moore. In 1879, George Davis conveyed 200 acres out of the League to George Moore. These 200 acres did not include the 52 acres at issue in this case. At the same time, George Moore conveyed to George Davis "all my right, title or claim to the [League] ... save and except those Two Hundred acres of said League ... this day conveyed by said Davis to me by metes and bounds in a Deed now in my possession therefor." The 1879 deed also stated, in pertinent part,

This Instrument is also given by me to said Davis to Evidence the fact that I am his tenant of said League representing and holding the same. All save and except the above mentioned Two Hundred acres for him and those he may represent in the premises.

*That I am agent for him and them and will look after said Land and protect the same from trespassers* and assist them in the sale thereof at such prices and such times as said Davis may from time to time direct and that I will on

demand of him said Davis surrender up the possession of said Land to him ... whenever called for and *allow no one else to occupy same without the consent of said Davis* given either to me or to such persons as he may designate.

(Emphasis added). In 1884, George Moore sold his 200 acres and moved to another part of the League, where he built his homestead on a 143–acre tract. In 1888, George Davis sold 120 acres of the League to a party not involved in this case. In 1892, George Moore's son William, who by then was 20 years of age, married Rosia Thomas. William and Rosia began living on a portion of the League that included the 52–acre tract presently at issue.

In 1898, the District Court of Polk County rendered judgment in a lawsuit concerning the League that included the 52–acre tract at issue here. The lawsuit, styled *Prussia Harney, et al. v. Geo. S. Davis, et al.*, had been filed in 1889 and both George Davis and George Moore were named defendants. William Moore was not a party to the suit. This judgment adjudicated title to the entire League as of 1898 to George Davis, less the 320 acres in the sales described above. The 1898 judgment recites that George and Ann Moore "have claimed" the land in the League, less the 320 acres sold, as tenants in possession for George Davis. The judgment states,

> [T]he said defendants Geo. A. Moore and his wife Ann M. Moore being shown to be tenants in possession of said defendant Geo. W. Davis for whom alone they claim and have claimed said Land in controversy herein it is ordered and adjudged that they go hence without day [sic] and recover of said plaintiffs their costs herein respectively incurred....

Thus, in 1898, George Davis was the titleholder of the entire League (less the 320 acres he conveyed to George Moore and the third-party as described above).

The same year the Prussia Harney judgment was rendered in 1898, George Davis died, leaving the League to his wife, Camilla. Approximately six years later, in 1904, Camilla conveyed 3,948 acres of the League to William Carlisle and Company, reserving the mineral estate—including the mineral estate to the 52–acre tract presently at issue—for herself. Shortly after that, George Moore died.

In 1909, almost five years after Camilla had sold the surface acres to which she held title in the League to William Carlisle and Company, William and Rosia Moore conveyed 78 acres of a 130–acre tract out of the League to William Carlisle and Company. William and Rosia Moore excepted from the grant the 52 acres involved in this case. In pertinent part, the 1909 deed states,

> The said William Moore and Rosia E. Moore wife of the said William Moore hereby covenant and agree with the said William Carlisle and Company that they have occupied, claimed and been in peaceable possession of the 130 acre tract first above described, for more than 10 years prior to this date.

Thus, the 1909 deed that sells 78 adjacent acres to William Carlisle and Company states that William and Rosia Moore "occupied, claimed, and [had] been in peaceable possession" of the 52 acres involved in this case. Since 1904, Camilla held title to the mineral estate in the 52 acres, but William and Rosia Moore claimed occupation and peaceable possession of that land since at least 1899.

Almost one century later, the Davises leased the 52 mineral acres in 1998 to Sun Operating Limited Partnership, who assigned its lease to Kerr–McGee. In 2001, the Gulleys leased the 52 mineral acres to Comstock Oil & Gas, Inc. Kerr–McGee

and a neighboring lessee formed a pooled unit, which included the 52 mineral acres, and drilled a well on the pooled land. After the well was drilled, a title opinion revealed the Gulleys' claim to the 52 mineral acres.

The Davises filed suit against the Gulleys [1] for trespass to try title, to quiet title, for breach of contract, for unpaid shares of proceeds derived from the sale of oil and gas production, and for attorney's fees. The Gulleys responded with a general denial and by asserting several affirmative defenses, including that their predecessors in interest—William and Rosia Moore—adversely possessed the 52 mineral acres.

The Davises filed a motion for summary judgment, asserting 53 traditional and no-evidence grounds. The Gulleys responded to the Davises' motion and filed the 1909 deed as summary judgment evidence. The Davises objected to the deed. The trial court sustained the Davises' objection to the 1909 deed.

The Gulleys filed an emergency motion for leave of court to supplement the summary judgment record with the affidavits of Norman Smith, John Ethan Collins, B.J. Collins, Edwin Smith, Doyle Odell Smith, and Betty J. Gulley, who testified to historical activities and operations by the Gulleys' predecessors in interest. The Davises objected to the affidavits on multiple grounds. The trial court granted the Gulleys leave to file the affidavits, but sustained the Davises' objections to the affidavits. The trial court granted summary judgment in favor of the Davises, awarding the Davises the 52 mineral acres in a final judgment. The Gulleys appealed to the Beaumont Court of Appeals, and the Texas supreme court transferred the case to this Court.

## Exclusion of Summary–Judgment Evidence

In their first and second issues, the Gulleys contend the trial court erred by excluding the 1909 deed and the six affidavits.

### A. 1909 Deed

■ In their first issue, the Gulleys contend the trial court erred by excluding the 1909 deed because it falls within an exception to the hearsay rule. The 1909 deed contains a recital that William and Rosia Moore "have occupied, claimed and been in peaceable possession of the 130 acre tract first above described, for more than 10 years prior to this date."

Assuming the trial court erred by excluding the 1909 deed, any error is harmless because the trial court's judgment does not turn on the evidence. *See Benavides v. Cushman, Inc.,* 189 S.W.3d 875, 879 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex.1995)) (stating evidentiary rulings do not cause reversible error unless judgment turns on excluded evidence). As discussed below, summary judgment was proper because the evidence shows, as a matter of law, William and Rosia Moore were not in exclusive possession of the 52–acre tract. The 1909 deed does not address this element of the Gulleys' adverse possession claim. Neither the trial court's decision nor this Court's decision turns upon this evidence. *See Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex.1985) ("The fact that the Gannons claimed the property does not satisfy their burden to tender conclusive evidence on each essential element of ad-

---

1. Linda Gerbens Adams, Linda Gerbens 1987 Trust, Julia H. Gerbens Jameson, Judy Gerbens Benkendorfer, and Patsy Gerbens Wilder were also named as defendants. They have since settled with the Davises and are not party to this appeal.

verse possession in order to prevail as a matter of law."). Therefore, the error, if any, is not reversible error. *See Benavides,* 189 S.W.3d at 879.

We overrule the Gulleys' first issue.

## B. Affidavits

■ In their second issue, the Gulleys assert the trial court erred by excluding the affidavits of Norman Smith, John Ethan Collins, B.J. Collins, Edwin Smith, Doyle Odell Smith, and Betty J. Gulley. Specifically, the Gulleys contend that the affidavits are exceptions to the hearsay rule and are admissible under Rule 803(19) as statements of reputation concerning personal or family history, under Rule 803(20) as statements of reputation concerning boundaries or general history, and under Rule 804(b)(3) as declarations about family history by unavailable witnesses. *See* TEX.R. EVID. 803(19), 803(20), 804(b)(3).

■ When an appellee objects to evidence on several independent grounds and, on appeal, the appellant complains of the exclusion of the evidence on only one of those grounds, the appellant waives any error by failing to challenge all possible grounds for the trial court's ruling that sustained the objection. *Trahan v. Lone Star Title Co. of El Paso, Inc.,* 247 S.W.3d 269, 284 (Tex.App.-El Paso 2007, pet. denied) (citing *Cantu v. Horany,* 195 S.W.3d 867, 871 (Tex.App.-Dallas 2006, no pet.)).

Here, in addition to objecting to the trial court that the affidavits are hearsay, the Davises objected to each affidavit on multiple other grounds. The Davises objected to all the affidavits based on relevance under Rule 402 and lack of personal knowledge of the witnesses under Rule 602. The specific basis for these objections is that each witness was born in 1915 or later, after the events in question occurred on the 52 acres. The Davises made

additional specific objections to Norman Smith's affidavit as follows:

1. "Otherwise inadmissible" under Rule 403.
2. Opinions concerning adverse possession are "conclusionary" and thus incompetent under Rule 601.
3. Inadmissible opinion by a lay witness under Rule 701 because no underlying facts to support opinion disclosed.
4. Statements concerning adverse possession and homestead are opinions on mixed question of law and fact and inadmissible under Rules 702 through 706.

The Davises made the following specific objections to the affidavits of John Ethan Collins and B.J. Collins:

1. "Otherwise inadmissible" under Rule 403.
2. Opinions concerning adverse possession are "conclusionary" and thus incompetent under Rule 601.
3. Statements concerning adverse possession and homestead are opinions on mixed question of law and fact and inadmissible under Rules 703 through 706.

The Davises made specific objections to the affidavit of Edwin Smith as follows:

1. "Otherwise inadmissible" under Rule 403.
2. Opinions concerning adverse possession are "conclusionary" and thus incompetent under Rule 601.
3. Inadmissible opinion by a lay witness under Rule 701 because no underlying facts to support opinion disclosed.
4. Statements concerning adverse possession and homestead are opinions on mixed question of law and fact and inadmissible under Rules 702 through 705.

The Davises made specific objections to the affidavit of of Doyle Odell Smith as follows:

1. "Otherwise inadmissible" under Rule 403.

2. Inadmissible opinion by a lay witness under Rule 701 because no underlying facts to support opinion disclosed.

3. Statements concerning adverse possession and homestead are opinions on mixed question of law and fact and inadmissible under Rules 703 through 706.

The Davises objected specifically to the affidavit of Betty J. Gulley by asserting that the affidavit contained inadmissible opinion by a lay witness under Rule 701 because no underlying facts to support the opinion were disclosed.

The trial court granted the Davises' objections without specifying the grounds for excluding the affidavits. On appeal, the Gulleys only assert that the trial court erred because the affidavits were admissible under exceptions to the hearsay rule. The Gulleys do not challenge any other objection that could be the basis for the trial court's ruling. Therefore, the Gulleys have waived any error in the exclusion of the affidavits on the unchallenged grounds. *See Trahan,* 247 S.W.3d at 284; *Cantu,* 195 S.W.3d at 871.

We overrule the Gulleys' second issue.

### Summary Judgment

In one of their grounds in their motion for summary judgment, the Davises assert that the evidence established that William and Rosia Moore held joint possession of the 52–acre tract with George Moore, George Davis's tenant. Because joint possession is not exclusive possession, the Davises contend that William and Rosia Moore's possession was not adverse as a matter of law.

### A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence,* 164 S.W.3d at 661. When, as here, a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex. 2004).

### B. Law of Adverse Possession

The Gulleys claim title through adverse possession under the 10–year and 25–year limitations statutes. Tex. Civ. Prac. & Rem.Code Ann. §§ 16.026(a), 16.027 (Vernon 2002). "'Adverse possession' means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (Vernon 2002). Joint use of the property with the owner does not satisfy the statute because "possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *Tran v. Macha,* 213 S.W.3d 913, 914 (Tex.2006) (quoting *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990)) (emphasis in original); *see also Rick v. Grubbs,* 147 Tex. 267, 214 S.W.2d 925, 927 (1948) (stat-

ing requirements of adverse possession "are not satisfied if the occupancy is shared with the owner or his agents or tenants"); *Martin v. McDonnold,* 247 S.W.3d 224, 236 (Tex.App.-El Paso 2006, no pet.) ("Joint or common possession by the claimant and the owner prevents the claimant's possession from the requisite quality of exclusiveness.").

■■■ An owner who is in actual possession of a portion of his land is considered to have possession of all his land; this is referred to as "constructive possession." *See Coleman v. Waddell,* 151 Tex. 337, 249 S.W.2d 912, 913 (1952). When an owner is in possession through his tenant, the owner's constructive possession extends to the land "which their tenants h[o]ld under and for them." *Sneed v. Hamilton,* 299 S.W.2d 769, 772–73 (Tex.Civ.App.-Beaumont 1957, no writ). When the owner is in constructive possession of his land, a person claiming adverse possession who is in joint possession with the owner is limited to claiming land actually enclosed. *Coleman,* 249 S.W.2d at 913; *see Rick,* 214 S.W.2d at 927; *Stroud v. Temple Lumber Co.,* 284 S.W.2d 909, 913 (Tex.Civ.App.-Beaumont 1955, writ ref'd n.r.e.).

■■■ When adverse possession commences before a severance of the mineral estate, the adverse possession includes both the surface and mineral estate. *Rio Bravo Oil Co. v. Staley Oil Co.,* 138 Tex. 198, 158 S.W.2d 293, 295 (1942); *see also*

*McDaniel v. Williams,* 429 S.W.2d 640, 642 (Tex.Civ.App.-Tyler 1968, writ dism'd) ("It is a well established rule of law in this state that an adverse entry upon the surface of land extends downward and includes title to underlying minerals where at time of entry there has been no severance of mineral estate."). Adverse possession commenced prior to limitations will extend to the mineral estate even if the titleholder severs the mineral estate before the limitations period has fully run. *Rio Bravo Oil Co.,* 158 S.W.2d at 295. In contrast, possession of the surface estate that commences after a severance of the mineral estate is not sufficient to constitute adverse possession of the mineral estate. *Natural Gas Pipeline Co. of Am. v. Pool,* 124 S.W.3d 188, 193 (Tex.2003). Thus, in this case involving adverse possession of the mineral estate in the 52–acre tract, William and Rosia Moore's adverse possession must have commenced before Camilla Davis severed the mineral estate by reserving it to herself in 1904. *See id.; Rio Bravo Oil Co.,* 158 S.W.2d at 295; *McDaniel,* 429 S.W.2d at 642.

## C. Analysis

■■■ Here, the issue is whether William and Rosia Moore acquired limitations title to the mineral estate of the 52–acre tract. In 1892, William and Rosia Moore began living on the 52 acres as husband and wife.[2] At that time, and for at least 20 years preceding that time, George Moore,

---

**2.** No evidence conclusively proves William and Rosia Moore began living on the 52 acres in 1892. At oral argument, in response to a question from the panel, the Gulleys stated William and Rosia Moore's possession of the 52 acres began in 1892. The Gulleys also assert this in the brief they submitted to this Court. Several of the affidavits that the Gulleys submitted as summary judgment evidence state that William and Rosia Moore began living on the 52 acres at or near the time of their marriage. But these affidavits

were ruled inadmissible by the trial court and we have upheld that ruling in our discussion of the second issue. In other portions of their brief and of the record, such as in response to interrogatories, the Gulleys asserted adverse possession began "prior to 1899," citing the 1909 deed as evidence. Whether William and Rosia Moore began living on the League in 1892 or "before 1899" does not affect our analysis concerning joint possession because George Moore constructively possessed the land for the Davises since at least 1892.

William's father, was George Davis's tenant on the land at issue in this appeal. In the 1879 deed, George Moore specifically stated he was George Davis's tenant on the League; he was George Davis's agent; and he would look after the League, protect the League from trespassers, and surrender possession of the League to George Davis on demand. Similarly, in 1889, the Prussia Harney lawsuit was filed and the judgment in that suit in 1898 stated George Moore was George Davis's "tenant in possession" of the League. Furthermore, in response to requests for admissions, the Gulleys admitted George Moore and his wife resided on the League from "prior to 1879 until a point in time after November 1904." *See Methodist Hosps. of Dallas v. Mid–Century Ins. Co. of Tex.,* 195 S.W.3d 844, 846 (Tex.App.-Dallas 2006, no pet.) (stating responses to requests for admission are competent summary judgment evidence when incorporated into motion and used against party making admission). Because George Moore, the tenant of George Davis, held the entire League for George Davis, George Davis was in constructive possession of the League. *See Coleman,* 249 S.W.2d at 913; *Sneed,* 299 S.W.2d at 772–73. Therefore, from 1892 through 1904, William and Rosia Moore's possession of the land within the League was joint possession with George Davis, the owner. *See Coleman,* 249 S.W.2d at 913; *Rick,* 214 S.W.2d at 927; *Stroud,* 284 S.W.2d at 913.

Because William and Rosia Moore's possession of the lands within the League was joint possession with George Davis, their adverse possession claim is limited to lands actually enclosed. *See Coleman,* 249 S.W.2d at 913; *Rick,* 214 S.W.2d at 927; *Stroud,* 284 S.W.2d at 913. The record contains no summary judgment evidence showing the 52–acre tract was actually enclosed. In their brief to this Court, the only evidence the Gulleys identify to show

the 52–acre tract was enclosed is in two of the affidavits that were excluded by the trial court. No evidence was admitted to show the 52–acre tract was actually enclosed. The Davises, therefore, are entitled to judgment as a matter of law on the grounds that William and Rosia Moore were in joint possession of the 52–acre tract with George Davis, who constructively possessed the entire League through his tenant George Moore. *See Tran,* 213 S.W.3d at 915; *Coleman,* 249 S.W.2d at 913; *Rick,* 214 S.W.2d at 927.

The Gulleys cite to the Texas supreme court's opinion in *Tex–Wis Co. v. Johnson,* 534 S.W.2d 895 (Tex.1976). In *Tex–Wis,* the court upheld a jury finding in favor of Alexander based on Alexander's long-time residency on the land and the absence of any evidence that any claim of ownership was asserted by the record owner, Tex–Wis, during that time. *Id.* at 898. Alexander's land was foreclosed by Tex–Wis, but he remained on the land despite the foreclosure. *Id.* Although Alexander did not give Tex–Wis actual notice of his intent to adversely possess the land, the court held notice of his intent could be inferred from the circumstances. *Id.* The court observed that "under certain circumstances, notice may be inferred" to satisfy the requirement that a tenant notify the titleholder that he is repudiating his tenancy as a permissive, holdover tenant. *Id.* In describing the type of circumstances sufficient to constitute an inference of notice, the court observed that an inference of notice may be made "when the adverse occupancy and claim of title to the property is so long-continued, open, notorious, *exclusive* and inconsistent with the existence of title in orders." *Id.* (emphasis added). The court held that an inference of notice of repudiation to the titleholder occurs when there is (1) long-continued possession under claim of ownership and (2) nonassertion of claim by the titleholder.

*Id.* The court explained that nonassertion of claim by the titleholder means "the absence of any overt act of ownership on the part of the record owner which is inconsistent with notice of a repudiation." *Id.* As an example of conduct found sufficient to show a claim by a titleholder, the court said payment of taxes shows an assertion of ownership by the titleholder. *Id.* Unlike Tex–Wis, which failed to assert any claim on the property during the time Alexander was on the land, here, George Davis did make an assertion of ownership. Like the act of paying taxes, George Davis asserted a claim on the land by leasing his land to George Moore, who held the entire League for him. As we note above, the Gulleys admitted that George Moore and his wife resided on the League from "prior to 1879 until a point in time after November 1904." By leasing the land and having his lessee occupy the land, George Davis, the titleholder, asserted his claim on the land. ·Accordingly, the Gulleys have failed to establish the second element for constructive notice, which requires the nonassertion of a claim of ownership by the title holder. The holding in *Tex–Wis,* therefore, is consistent with our holding that, at most, William and Rosia Moore were in joint possession of the land with George Davis, who constructively possessed the land through George Moore.

Having determined the trial court properly granted summary judgment on the ground of joint possession, we affirm the summary judgment without addressing the alternate grounds. *See Joe,* 145 S.W.3d at 157. We overrule the Gulleys' third issue.

### Conclusion

We affirm the judgment of the trial court.