## RIO BRAVO OIL COMPANY V. STALEY OIL COMPANY ET AL.

No. 7759. Decided January 21, 1942.
(158 S. W., 2d Series, 293.)

*Bullington, Humphrey & Humphrey* and *Frank Ikard,* all of Wichita Falls, for plaintiff in error.

*T. R. Boone* and *Charles C. McDougald,* both of Wichita Falls, for defendant in error.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

The petition of Staley Oil Company, plaintiff in the trial court, was in two counts for the title and possession of a seven-eighths (7/8) oil, gas and leasehold estate in and to 160 acres of land being the southwest quarter of Sec. No. 33, Block 7, H. & T. C. Ry. Co. lands in Wichita County, Texas. The first count was in statutory form of trespass to try title. The second count alleged title under the three, five, ten and twenty-five years statutes of limitation, setting forth the statutory elements as to each and that it was an innocent purchaser for value as against certain instruments under which the defendant claimed title as hereinafter described. M. L. Banta intervened adopting, for the most part, the pleadings of the plaintiff and claimed the fee simple title to said land as against the asserted mineral title of the defendant. He made no issue with the plaintiff. The first amended original answer of the defendant, Rio Bravo Oil Company, was (1) a plea of not guilty as to the first count of the pleadings of plaintiff and intervenor; (2) a special plea that it owned the minerals on, in and under said 160 acres of land under contracts of conveyance between Houston & Texas Central Railway Company, patentee, and James H. Banta of date August 1, 1882, and subsequent mesne contracts and conveyances hereinafter more fully noted, but it disclaimed any other interest in the land. Thus, the suit resolved itself into a dispute as to who owned the mineral estate. Trial to a jury upon special issues resulted in a judgment for the plaintiff as prayed and, in part, for intervenor, as against the asserted mineral title of the defendant. This judgment was affirmed by the Court of Civil Appeals, at Fort Worth. See 138 S. W. (2d) 838, which is referred to for a more detailed statement of the case than we shall give. Intervenor Banta did not appeal, so the correctness of the trial court's judgment as to him is not before us.

The plaintiff, Staley Oil Company, in attempting to establish record title in itself, offered the original patent from the State of Texas to Houston & Texas Central Railway Company and a mortgage executed in 1866 by said railway company to Shepherd Knapp and David S. Dodge, as trustees, to secure certain described bonds issued by it with power of sale of the lands covered thereby to retire said bonds, which mortgage covered the land in dispute here and also authorized the trustees to execute deeds to such lands as they sold. A deed from Nelson S. Easton and James Rintoul to Jas. H. Banta of date August 3, 1885, in which it is recited that the Houston & Texas Central Ry. Co. "has heretofore made, executed and delivered to

the said party of the second part, an instrument in writing dated August the first, 1882, and numbered 38X contracting to convey or purporting to convey" the lands in dispute, that the consideration therefor had been collected by said railway company but accounted for to said trustees and that it conveys "all the right, title and interest, estate and property" of grantors, as trusees, "to have and to hold all and singular the premises above mentioned unto the said party of the second part (Banta), his heirs and assigns forever, subject to any and all encumbrances, if any there be on the said lands and to the exceptions, reservations and agreements (if any) in said instruments contained," was offered by the defendants while cross-examining a witness for plaintiff as plaintiff was offering its testimony. Plaintiff announced it was claiming title under this deed as well as title by limitation. These instruments, together with other mesne conveyances, transfers and mineral leases, some of which will hereafter be more fully described, constituted plaintiff's proof of record title.

In proof of its title to the mineral estate the defendant offered a contract in duplicate originals of date August 1, 1882, allegedly executed by and between James A. Banta and the Houston and Texas Central Railway Company, in which the latter agreed that when Banta had paid two notes described due in one and two years, respectively, it would make and execute a special warranty deed conveying to him the aforesaid S. W. 1/4th of Section No. 33, Block No. 7, "but made subject to the following rights of said Railway Company, each and all of which rights are hereby reserved and are not to pass by the deed to be made by said Railway Company * * * * coal, minerals, stone, or any other valuable deposit" under said lands with right of ingress and egress to take them, etc. *This contract of sale was not recorded until April 12, 1938.* When these duplicate contracts were offered in evidence, both plaintiff and intervenor objected because they "are not properly proven up, or that the signature in evidence here is J. H. Banta's," which objection the trial court overruled, whereupon counsel for defendant said, "I offer it on the ground of ancient instruments, the date of it is 1882," and the court replied, "I will let them in for the time being." No further proof was ever made with reference to them nor did the court ever exclude them from the record.

█ We think the Court of Civil Appeals was correct in holding, on cross assignment of error by Staley Oil Company, that

the trial court erred in admitting this contract. Before it could properly have been admitted as an ancient instrument, in the absence of proof of execution, it was necessary that defendant prove the following predicate elements outlined by Justice Greenwood in Emory v. Bailey, 111 Texas 337, 234 S. W. 660, 18 A. L. R. 901: (1) that it came from the proper custody; (2) that in appearance it was free from suspicion; and (3) that it had been in existence for more than thirty years. The purported date of the instrument offered did not prove that it was thirty years old. West v. Houston Oil Co. of Texas (Civ. App.), 120 S. W. 228 (er. ref.) Nowhere does the record show that the contract came from proper custody, that is, from some place or person where or with whom it would be natural to find a genuine document such as the one in question. Therefore, it was not shown to be such an instrument as is admissible under our ancient documents rule so as to dispense with the necessity of proving execution.

■ With this contract excluded from consideration, as it must be, it follows that there was no record evidence showing any severance of the mineral estate so as to defeat the plea of limitation title by Staley Oil Company, provided the same was otherwise established, as was true in Rio Bravo Oil Co. v. McEntire 128 Texas 124, 95 S. W. (2d) 381. In that case there was no objection to the contracts of sale that severed the mineral estate and they were properly in the record, so the views we entertain in this case are in no wise contrary to that authority.

Until there is a severance of the mineral estate it passes with the surface title because the original fee carries both the mineral and surface estates. Only an effective deed will operate to sever the two estates. Thomas v. Southwestern Sett. & Develop .Co., 132 Texas 413, 123 S. W. (2d) 290, 300. And where adverse possession sets the limitation statutes in motion so as effectively to mature title to the surface estate in a claimant, execution and delivery of a mineral lease by another (unaccompanied by ouster or suit) even during the period that limitation is so running will not operate as a severance so as to defeat claimants' title to the mineral estate as well as the surface estate. See Broughton v. Humble Oil & Refining Co. (Civ. App.), 105 S. W. (2d) 480 (er. ref.) and the many authorities there cited. (In the case at bar the record shows no attempted severance of the mineral estate in behalf of Rio Bravo Oil Company until after plaintiff's asserted limitation title had matured.)

■ Bearing in mind the principles just stated and excluding from consideration the alleged "severance" deed of date August 1, 1882, we shall now consider whether the plaintiff's claim of title by limitation can be sustained. If so, such will settle this case and render all other questions immaterial, because a trial court judgment, if correct, will be sustained on appeal, irrespective of the ground upon which that court based it. Waco Development Co. v. McNeese (Civ. App.), 209 S. W. 464 (er. ref.).

The jury found in response to special issues Nos. 1, 2, 3, 4, 20 and 24 that the plaintiff and its predecessors in title "have asserted claim to the entire world, in and to the minerals in and under the land in question for a period of ten years prior to April 1st, 1938( the alleged severance deed was filed for record April 12, 1938); that such assertion of claim was of notorious character; that the defendant, Rio Bravo Oil Company, or its predecessors in title, had notice of said assertion of said adverse claim to said minerals for a period of ten years; that by the use of ordinary diligence the defendant, Rio Bravo Oil Company, or its predecessors in title, could have learned of the claim of plaintiff and its predecessors in title to the minerals under said land prior to April 1, 1928; that plaintiff and its predecessors in title had peaceable and adverse possession of the minerals underneath said land for a period of ten years prior to April 1st, 1938.

In his judgment the trial court held that these findings were without support in the evidence. As pointed out by the Court of Civil Appeals, the trial court's rejection of these findings was apparently predicated upon the assumption that there had been a severance of the mineral estate arising from the contracts of sale of date August 1, 1882, erroneously admitted in evidence, as above decided. With these findings in the record ten years' limitation is established in plaintiff and its predecessors if there is any evidence to support them, the Court of Civil Appeals having held the testimony sufficient in that regard.

When Jas. H. Banta got the deed from Easton and Rintoul on August 3, 1885, above described, he immediately took possession of the 160 acres conveyed thereby to him, fenced it and continuously lived on it as his homestead until his death in 1916, during all of which time nobody asserted any adverse claim to any part of it. Upon the death of Jas. H. Banta his son, M. L. Banta, went into possession and lived upon the land

continuously up to April 12, 1938, running his cattle on 120 acres of it and farming the other 40 acres, which had been put into cultivation by Jas. H. Banta in 1885. By instrument dated and recorded December 6, 1886, Jas. H. Banta designated this land as part of his homestead. During all this time J. H. Banta and M. L. Banta paid all taxes assessed against the land.

The testimony showed numerous assertions by plaintiff and its predecessors of title to the mineral estate in controversy. On April 6, 1909, J. H. Banta, joined by his wife and Miss Ruby Batna, executed to D. C. Green and others an oil and gas lease on the 160 acres in question conveying "all of the oil and gas in and under" said land. This lease was duly recorded in Wichita County, Texas, on April 21, 1909, and contained the usual forfeiture clause in the event drilling operations were not begun within one year. On August 10, 1911, J. H. Banta and wife executed to Fred S. Rowe and others an oil and gas lease conveying the oil and gas in and under the south half of said 160 acres and retaining the usual one-eighth royalty. This lease contained the one-year forfeiture clause and was duly recorded in Wichita County on September 20, 1911. On January 17, 1913, J. H. Banta and wife executed to Frank Cullinan a lease on said 160 acres conveying all oil, gas, coal and other minerals in and under said lands. This lease reserved the one-eighth royalty in grantors and carried the one-year forfeiture provision. It was duly recorded in Wichita County on March 25, 1913. By instrument of date December 20, 1913, and duly recorded in Wichita County on January 29, 1914, Cullinan transferred the lease last aforesaid to Producers Oil Company. On July 22, 1922 (J. H. Banta having meantime died) M. L. Banta, joined by other heirs and vendees claiming under J. H. Banta, executed to Texas Company a lease covering the north one-half of said 160 acres conveying the oil and gas in and under said 80 acres subject to a one-eighth royalty in grantors. It provided for forfeiture after one year if drilling operations were not sooner begun or payment of money rentals not made every six months thereafter not to exceed five years. This lease was duly recorded in Wichita County on October 27, 1922. On September 25, 1937, two instruments of lease were executed by M. L. Banta and E. L. Chilton and all record owners of fee in and to said 160 acres to plaintiff Staley Oil Company leasing the same for oil and gas operations for a period of 10 years. These instruments apparently were pursuant to a recorded partition of the 160 acres in question between Banta and Chilton as holders of title by transfer and deed from other heirs and

vendees of J. H. Banta. Said two leases retained a one-eighth royalty and they were duly recorded in Wichita County on November 3, 1937.

The testimony further showed that for a period of six months in the year 1924, Austin Bridge Company operated a gravel pit on the 160 acres in question under arrangement with M. L. Banta.

M. L. Banta testified that from 1885 up to the spring of 1938 nobody had asserted any adverse claim to the minerals in said 160 acres and his testimony was in no wise contradicted. Aside from the erroneously admitted "severance" deed of date August 1, 1882, already considered, the only recorded assertion of title to the mineral estate by the Rio Bravo Oil Company was a conveyance of the minerals in said lands by named trustees acting under federal court order, of date October 9, 1918, but this instrument was never recorded in Wichita County until April 12, 1938—more than five months after Staley Oil Company had recorded its aforesaid leases, and there is neither evidence nor allegation that either Staley Oil Company or its predecessors had any actual notice thereof.

Under this State of facts we agree with the Court of Civil Appeals that the trial court was in error in holding that the answers of the jury to special issues Nos. 1, 2, 3, 4, 20 and 22, favoring plaintiff's claim of ten years' limitation in the mineral estate in said 160 acres, were without support in the evidence. We think they are amply supported by the evidence and that by virtue thereof plaintiff was entitled to judgment on its plea of limitation title based on peaceable and adverse possession of the mineral estate for a period of ten years prior to April 1, 1938.

In view of what we have said, we are not called upon to construe the alleged contract of sale of date August 1, 1882, between James A. Banta and the Houston & Texas Central Railway Company, or to determine whether plaintiff was charged with notice of its recitals, or otherwise to consider it. In so far as this case is concerned, that instrument may as well never have been. If it should be assumed, for the sake of argument, that plaintiff and its predecessors were precluded from asserting limitation title to the mineral estate by any terms of said contract it would still be incumbent on the defendant to prove such terms, that is, to show in the manner

required by law either the execution of the contract or that it was an ancient instrument. Having failed in that, it cannot now be heard to urge the same in bar of plaintiff's title.

Judgments of the Court of Civil Appeals and of the trial court both affirmed.

Opinion adopted by the Supreme Court January 21, 1942.