ACCEPTED
04-14-00668-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/14/2015 4:44:43 PM
KEITH HOTTLE
CLERK

No. 04-14-00668-CV

In the

Fourth Court of Appeals

at San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
5/14/2015 4:44:43 PM
KEITH E. HOTTLE
Clerk

West 17th Resources, LLC, Pamela Mika Wolf, and Thomas Mika,

Appellants,

vs.

Lucian A. Pawelek and Carleen J. Pawelek,

Appellees.

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
5/14/2015 4:44:43 PM
KEITH E. HOTTLE
Clerk

Appealed from the 81st District Court of

Karnes County, Texas

Cause No. 13-04-00087-CVK

Appellees' Brief

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
5/14/2015 4:44:43 PM
KEITH E. HOTTLE
Clerk

Baldemar Garcia Jr.
Texas Bar No. 00790740
email: bgarcia@personwhiworth.com
Ricardo E. Morales
Texas Bar No. 00794331
email: remorales@personwhitworth.com
PWBM, LLP
602 East Calton Road, 2nd Floor (78041)
P. O. Drawer 6668 (78042)
Laredo, Texas
voice 956.727.4441
facsimile 956.727.2696

Appellees request oral argument

## Table of Contents

Index of Authorities..............................................................................................3

Statement of the Case.........................................................................................7

Statement Regarding Oral Argument..................................................................8

Replies to Issues Presented................................................................................8

Issues 1-7 (estoppel by deed) ................................................................... 9

Irene Mika unambiguously agreed to "WARRANT and FOREVER DEFEND" all title deeded to Carleen and Lucian Pawelek. She owned 1/10th as trustee and beneficiary for life with the unrestricted and unquestionable rights to sell or exhaust the corpus, and she owned 1/6th individually. None of the signatures and acknowledgments indicate capacity ("individually," as "trustee," or both) for any of the fifteen Mika grantors. Did Irene unambiguously convey her entire interest, or just her individual interest? ................................................................... 9

Does the unambiguous warranty deed signed by Irene conveying all interests in 290.69 acres in Karnes County, Texas estop her heirs, Pamela and Thomas, from later claiming a 1/10th interest against her grantees the Paweleks? ......................... 9

Issues 8-12 (adverse possession), Issue 13 (ouster), Issue 14 (remainder), and Issue 15 (acknowledgment) .............................................................. 9

Since 1994, the Paweleks have been in undisturbed possession, under a chain of registered deeds, and paying taxes. Pamela and Thomas never tried to possess the property and did not file suit until eighteen years later, in 2013. Is adverse possession perfected? Do a severance in 2009 or an acknowledgment in 2012 matter? Were Pamela and Thomas's possible remainder interests defeated? Was Irene's deed an ouster of any contingent remainder interest Pamela and Thomas might claim? .................................................................................................. 9

Statement of Facts.............................................................................................9

I. Property Ownership .............................................................................. 9

A. Prosper Mika Trust............................................................... 10

II. Property Actions .................................................................................. 11

III. Property Dispute................................................................................. 13

IV. Property Litigation.............................................................................. 14

V. Competing Cross-Motions for Summary Judgment.......................................... 14

    A. West 17th's amended summary judgment motions....................................... 14

    B. Paweleks' traditional summary judgment motion...................................... 16

Summary of Argument.................................................................................... 17

Argument......................................................................................................... 19

    I. Standard of Review................................................................................... 19

    II. Unambiguous Warranty Deed.................................................................. 20

    III. Estoppel by Deed ................................................................................. 22

    IV. Adverse Possession................................................................................ 26

        A. Life Estate + Power of Disposition........................................................ 28

        B. Late Severance & Acknowledgment ...................................................... 29

        D. Pamela and Thomas were Ousted by Irene's Deed to the Paweleks ............ 31

    V. Trustees Can Bind Themselves Individually as well as their Beneficiaries ........ 31

    VI. Limitations ......................................................................................... 33

Prayer............................................................................................................... 34

Certificate of compliance ................................................................................ 35

Certificate of service....................................................................................... 35

Appendix......................................................................................................... 36

## Index of Authorities

Cases

*Auchterlonie v. McBride*, 705 S.W.2d 183 (Tex. App.—Houston [14th Dist.] 1985, no pet.) ............................................................................................ 30

*Broussard Trust v. Perryman*, 134 S.W.2d 308 (Tex. Civ. App.—1939, writ ref'd). 32

*Calvert v. Thompson*, 339 S.W.2d 685 (Tex. Civ. App.—Austin 1960, writ ref'd). 29

*Chapman v. Parks*, 347 S.W.2d 805 (Tex. Civ. App.—Amarillo 1961, writ ref'd n.r.e.) ................................................................................................ 21

*Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623 (Tex. 1996).......................... 19

*Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983) ............................................... 21

*Comm'rs Court v. Agan,* 940 S.W.2d 77 (Tex.1997) ..................................... 20

*Crawford v. El Paso Land Improvement Co.*, 201 S.W. 233 (Tex. Civ. App.—El Paso, no writ) ........................................................................................... 32

*Dickerson v. Keller*, 521 S.W.2d 288 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.) ................................................................................................ 29

*Duhig v. Peavy-Moore Lumber Co., Inc.*, 135 Tex. 503, 144 S.W.2d 878 (Tex. 1940) ............................................................................................... 23, 24

*Dynegy Midstream Servs. v. Apache Corp.*, 294 S.W.3d 164 (Tex. 2009) ................... 20

*Edds v. Mitchell*, 143 Tex. 307, 184 S.W.2d 823 (1945).......................... 29

*Greene v. White*, 137 Tex. 361, 153 S.W.2d 575 (1941) ........................... 23

*Hext v. Price*, 847 S.W.2d 408 (Tex. App.—Amarillo 1993, no writ)................... 29

*Holmes v. Morales,* 924 S.W.2d 920 (Tex.1996)......................................... 20

*Jones v. Hyman*, 107 S.W.3d 830 (Tex. App.—Dallas 2003, no pet.) ..................... 19

*Kahle v. Stone*, 95 Tex. 106, 65 S.W. 623 (1901)......................................... 32

*Luckel v. White*, 819 S.W.2d 459 (Tex. 1991)............................................. 21

*McCook v. Amarada Petroleum Corp.*, 93 S.W.2d 482 (Tex. Civ. App.—Texarkana 1936, writ dism'd)................................................................. 31

*McDaniel v. Williams,* 429 S.W.2d 640 (Tex.Civ.App.-Tyler 1968, writ dism'd) ... 29

*Mid-Century Ins. v. Ademaj*, 243 S.W.3d 618 (Tex. 2007) ........................... 19

*Miles v. Martin*, 321 S.W.2d 62 (Tex. 1959)............................................. 23

*Natural Gas Pipeline Co. of Am. v. Pool,* 124 S.W.3d 188 (Tex.2003) ..................... 30

*Nixon v. Mr. Property Mgmt Co., Inc.*, 690 S.W.2d 546 (Tex. 1985)......................... 19

*Parks v. Knox*, 61 Tex. Civ. App. 493, 130 S.W. 203 (1910, no writ)...................... 32

*Part v. Ratisseau*, 236 S.W.2d 503 (Tex. Civ. App.—San Antonio 1951, writ ref'd n.r.e.) ................................................................................................................. 31

*Republic Prod. Co. v. Lee*, 121 S.W.2d 973 (Tex. 1938)............................................... 31

*Rio Bravo Oil Co. v. Staley Oil Co.,* 138 Tex. 198, 158 S.W.2d 293 (1942)........ 29, 30

*Rogers v. Ricane*, 884 S.W.2d 763 (Tex. 1994) ...................................................... 21, 22

*Santa Fe Energy Operating Partners v. Carrillo*, 948 S.W.2d 780 (Tex. App.—San Antonio 1997, writ denied)................................................................................... 30

*Spence v. State Nat'l Bank of El Paso*, 5 S.W.2d 754 (Tex. Comm'n App. 1928)... 23

*Strong v. Garrett*, 224 S.W.2d 471 (Tex. 1949)............................................................ 31

*Surtees v. Hobson*, 4 S.W.2d 245 (Tex. Civ. App.—El Paso 1928) aff'd, 13 S.W.2d 345 (Tex. Comm'n App. 1929)........................................................................... 22

*Teal Trading and Development, L.P. v. Champee Springs Ranches Property Owners' Ass'n*, 432 S.W.3d 381 (Tex. App.—San Antonio 2014, pet. denied) ........................ 25

*Texas Mun. Power Agency v. Public Utility Comm'n of Texas*, 253 S.W.3d 184 (Tex. 2008) ..................................................................................................................... 20

*Williams v. Hardie*, 85 Tex. 499, 22 S.W. 399 (1893)................................................. 31

*Woldert v. Skelly Oil Co.*, 202 S.W.2d 706 (Tex. Civ. App.—Texarkana 1947, writ ref'd n.r.e.)........................................................................................................... 22

*Wolgamot v. Corley*, 523 S.W.2d 491 (Tex. App.—Waco 1975, writ ref'd n.r.e.)... 30

*XTO v. Nikolai*, 357 S.W.3d 47 (Tex. App.—Fort Worth, pet. denied) ............. 22

Statutes

TEX. CIV. PRAC. & REM. CODE ANN. § 121.006 (Vernon 1985) ......................... 33

TEX. CIV. PRAC. & REM. CODE ANN. § 16.021 (Vernon 1985)............................ 26

TEX. CIV. PRAC. & REM. CODE ANN. § 16.024 (Vernon 1985)............................ 26

TEX. CIV. PRAC. & REM. CODE ANN. § 16.025 (Vernon 1985)............................ 26

TEX. CIV. PRAC. & REM. CODE ANN. § 16.026 (Vernon 1989)............................ 26

TEX. CIV. PRAC. & REM. CODE ANN. § 16.033 (Vernon 2007)............................ 33

TEX. PROP. CODE ANN. § 5.022 (Vernon 1983)..................................................... 21

Rules

TEX. R. APP. P. 9.4.................................................................................................... 35

TEX. R. APP. P. 9.5.................................................................................................... 35

No. 04-14-00668-CV

West 17th Resources, LLC, Pamela Mika Wolf, and Thomas Mika,
Appellants,

vs.

Lucian A. Pawelek and Carleen J. Pawelek,
Appellees.

## Appellees' Brief

To the Honorable Fourth Court of Appeals:

Now Come appellees Lucian A. and Carleen J. Pawelek and file this their brief, and in support thereof, would respectfully show unto the Appellate Court as follows, to-wit:

### Statement of the Case

There is a title dispute over a $1/10^{th}$ mineral interest in 290.69 acres located in Karnes County, Texas. (CR at 19) Cross-motions for summary judgment were filed, and judgment was granted in favor of defendants/appellees Lucian A. and Carleen J. Pawelek and against plaintiffs/appellants West 17th Resources, LLC, Pamela Mika Wolf, and Thomas Mika. (CR at 1207, 1210) The summary judgment was severed for purposes of appeal. (CR at 1203)

West 17th's live pleading was their first amended petition advancing a trespass to try title claim; Paweleks' live pleadings were their second amended answer asserting adverse possession and limitations and a counterclaim alleging trespass to try title, estoppel by deed, declaratory judgment, and quiet title.[1] (CR at 18, 767) West 17th's amended traditional and no evidence summary judgment motions were met by Paweleks' objections and response, followed by a reply from West 17th and lastly a sur-reply from Pawelek. (CR at 247, 786, 1173, 1st Supp. CR at 7) Paweleks' traditional summary judgment was greeted by West 17th's response. (CR at 404, 1173)

## Statement Regarding Oral Argument

Appellees request oral argument only if granted to appellants.

## Replies to Issues Presented

Appellants' present seventeen enumerated issues for review. Issues four and six are identical. Appellees will respond by topic.

---

[1] Paweleks' additional claims (duty to defend title, breach of warranty, common law fraud, fraud in a real estate transaction, and fraud by nondisclosure) were severed into another cause number. (CR at 1203)

**Issues 1-7 (estoppel by deed)**

Irene Mika unambiguously agreed to **"WARRANT and FOREVER DEFEND"** all title deeded to Carleen and Lucian Pawelek. She owned $1/10^{th}$ as trustee and beneficiary for life with the unrestricted and unquestionable rights to sell or exhaust the corpus, and she owned $1/6^{th}$ individually. None of the signatures and acknowledgments indicate capacity ("individually," as "trustee," or both) for any of the fifteen Mika grantors. Did Irene unambiguously convey her entire interest, or just her individual interest?

Does the unambiguous warranty deed signed by Irene conveying all interests in 290.69 acres in Karnes County, Texas estop her heirs, Pamela and Thomas, from later claiming a $1/10^{th}$ interest against her grantees the Paweleks?

**Issues 8-12 (adverse possession), Issue 13 (ouster), Issue 14 (remainder), and Issue 15 (acknowledgment)**

Since 1994, the Paweleks have been in undisturbed possession, under a chain of registered deeds, and paying taxes. Pamela and Thomas never tried to possess the property and did not file suit until eighteen years later, in 2013. Is adverse possession perfected? Do a severance in 2009 or an acknowledgment in 2012 matter? Were Pamela and Thomas's possible remainder interests defeated? Was Irene's deed an ouster of any contingent remainder interest Pamela and Thomas might claim?

**Statement of Facts**

**I. Property Ownership**

Ten years after her death, Irene Mika's children would question her prior property ownership and actions, providing the motivation for this title litigation. Irene inherited her ownership in a 290.69-acre tract in Karnes

County, Texas from two sources: (1) $1/10^{th}$ from her husband Prosper under his will and (2) $1/6^{th}$ from her mother-in-law Mary by deed. (CR at 457, 469) Mary Mika, owner of 100% of the property, by deed had previously conveyed ½ to her husband Felix, who on his death divided his estate equally amongst their five sons ($1/2 \div 5 = 1/10^{th}$ each), including Prosper. (CR at 444, 448) Prosper left his estate in trust to his wife Irene and then their two children, plaintiffs/appellants Pamela Mika Wolf and Thomas Mika. (CR at 457)

Mary's remaining ½ interest was then conveyed by deed in three parts: one to Mary's son Aloys Mika ($1/2 \div 1/3 = 1/6^{th}$), one to Mary's daughter-in-law Irene ($1/6^{th}$), and one divided amongst thirteen of Mary's grandchildren ($1/6 \div 1/13 = 1/39^{th}$ each). (CR at 469)

Irene's children, Pamela Mika Wolf and Thomas Mika, would later second-guess the characteristics of their mother's $1/10^{th}$ ownership from their father.

### A. Prosper Mika Trust

Prosper's will named his wife as executrix, sole trustee, and beneficiary of his entire estate for as long as he might live. (CR at 457, 459, 464) As executrix and trustee, she was specifically empowered to "sell, exchange, assign, transfer and convey any security or property, real or personal, held in [Prosper's] estate or in any trust fund, at public or private sale, at such time and price and upon such terms and conditions (including credit) as such Executrix or Trustee may

determine." (CR at 459-60) To underscore her authority, Prosper's last words provided:

> I authorize and empower my Trustee, in her sole and absolute discretion, at any time and from time to time, to disburse from the corpus of the trust estate created under this will (even to the point of completely exhausting the same), such amounts as she may deem advisable to provide adequately and properly for the health, support, and maintenance, of the current income beneficiary thereof, his or her spouse and issue. … the Trustee's discretion shall be conclusive as to the advisability of any such disbursement and the same shall not be subject to judicial review.

(CR at 464) If any trust estate assets remained at Irene's death, they would vest equally in Pamela and Thomas. (CR at 457) The trust interests were not subject to execution, and further would not vest until a beneficiary's majority. (CR at 457-59)

## II. Property Actions

Finally on December 31, 1994, Irene, her brother-in-law Aloys, and the thirteen nephews and nieces executed a deed to defendants/appellees Carleen J. and Lucian A. Pawelek for "all" of the 290.69 acres. (CR at 474) None of the fifteen grantors indicated their capacity or the character or size of their individual or collective interests, for example: Aloys did not specify whether he was conveying the interest received from his father Felix $(1/10^{th})$ or his mother Mary $(1/3^{rd})$, or both, nor did Irene differentiate between the interest received

from her husband Proper (1/10th) and her mother-in-law Mary (1/3rd). None of the grantors' signatures on the deeds or acknowledgements was accompanied by descriptions such as trustee, executor/rix, guardian, general partner, president, etc. None of the conveyed interests was characterized as life estates, remainders, fee simple determinable, etc. And other than denying community character and homestead rights, there was no percentage or fractional recitation of the individual or total ownership conveyed other than "all" of the property.

Immediately before their sworn signatures, the fifteen Mika family grantors in all caps collectively bound one another and their heirs (*i.e.*, Pamela and Thomas) to "WARRANT and FOREVER DEFEND" the Paweleks' ownership of the 290.69 Karnes County property against any person who might claim an interest. (CR at 476-77)

After the 1994 warranty deed and up until her death on February 4, 2003, Irene Mika would never claim an interest in the 290.69 Karnes County tract. (CR at 93) Pamela and Thomas also admit not entering the property. (CR at 412, 1150, 1160, 1167-68) But neither the terms of the 1994 deed nor this eighteen-year span of non-ownership would dissuade Pamela and Thomas from asserting ownership through their mother Irene and father Prosper.

## III. Property Dispute

The Paweleks were in undisturbed possession from 1994 and signed an oil and gas lease fifteen years later on 4/1/2009 with Murphy Exploration & Production Company-USA. (CR at 484, 491, 498, 504)

Murphy's title opinion noted the possibility of a discrepancy between Irene's intent to convey all of her interest and her corresponding plain signature line. (CR at 412, 522) So in 2012 appellee/defendant Carleen Pawelek telephoned appellant/plaintiff Pamela Wolf and asked her to sign a special warranty deed because her mother Irene had "inadvertently forgot to sign in her capacity as trustee of the Prosper A. Mika Trust." (CR at 488, 507, 509) Pamela Wolf refused, she and her brother Thomas signed their own oil and gas lease with plaintiff/appellee West 17th Resources, LLC, and together they filed suit in 2013, being eighteen years after the Mika family deed to the Paweleks. (CR at 338, 351, 334, 62) West 17th then assigned its leases to Murphy Exploration & Production Company-USA, the same lessee which had signed leases with the Paweleks. (CR at 376)

Pamela and Thomas have never accused their mother Irene of self-dealing with respect to their father Prosper's trust.

## IV. Property Litigation

Pamela and Thomas's ownership claim is based on absence: the lack of any capacity designations next to the signature lines in the 1994 deed signed by their mother Irene. Based on this absence, Pamela and Thomas argue that their mother Irene really owned only a $1/10^{th}$ life estate in trust through her husband Prosper, and that the 1994 deed conveyed only her $1/6^{th}$ held individually through her mother-in-law Mary. (CR at 6-7)

The Paweleks responded by filing third party claims against all fifteen Mika family grantors in the 1994 deed for breaching their warranty of title, which West 17th successfully struck. (CR at 161, 190, 245)

West 17th's trespass to try title claim was defensively rebutted by Paweleks' plea of not guilty, general denial, and affirmative defenses of limitations and offensively met with a counterclaim for trespass to try title, estoppel by deed, declaratory judgment, suit to quiet title, duty to defend title, breach of warranty, and fraud (common law/statutory/non-disclosure). (CR at 18, 767)

## V. Competing Cross-Motions for Summary Judgment

### A. West 17th's amended summary judgment motions

Pamela and Thomas's ownership concept had evolved into two components: (1) their mother Irene by the 1994 deed only conveyed her $1/6^{th}$ held

individually and not her 1/10[th] held as executrix/trustee/beneficiary and (2) even if Irene conveyed her 1/10[th], then she only conveyed her life estate interest and not the remainder interests. (CR at 6-7 [original petition], 263 [amended summary judgment motion])

West 17th's amended motion for traditional and no evidence summary judgment claimed the warranty deed signed by Irene was only an "individual capacity deed," even though the deed itself and acknowledgments do not designate any capacities for any of the fifteen grantors. (CR at 247, 250) To avoid Paweleks' nineteen-year adverse possession, West 17th's motion claimed Pamela and Thomas had a cotenancy requiring an ouster. (CR at 261)

Paweleks' summary judgment response stressed the plain meaning of the granting clause and warranty of title in Irene's deed, invoked the estoppel by deed doctrine, and highlighted their eighteen-year adverse possession. (CR at 789-90) The Paweleks' summary judgment proof included the underlying real estate contract with the Mika family grantors that was binding on their heirs, successors, and, assigns; required a "General Warranty Deed conveying good and marketable title in fee simple to all of the Property;" and provided for title insurance for the Paweleks' fee simple title. (CR at 409, 1086, 1084, 1087, 1091). The summary judgment attachments also detailed the activities constituting adverse possession. (CR at 895-96, 902-03, 908-09 [property use], 937-1076 [tax receipts]) The summary judgment response even explained

Irene's deed to the Paweleks serving as an ouster of Pamela and Thomas and the commencement of Paweleks' adverse possession. (CR at 220-21)

### B. Paweleks' traditional summary judgment motion

Filed one day after Pamela and Thomas's amended motions, Paweleks' traditional motion for summary judgment focused on the clear and unambiguous language of the Mika-Pawelek deed's granting and warranty clauses to all 290.69 acres and the resulting estoppel binding her heirs—all fortified by eighteen years of peaceful possession. (CR at 404-05, 412, 416 [unambiguous], 418-20 [estoppel by deed doctrine]) The response explained how adverse possession against a trustee passed through to her beneficiaries. (CR at 435)

Because of the similarities of the issues in the cross-motions, Pamela and Thomas combined their summary judgment response and reply in the same document. (CR at 1173) Pamela and Thomas now dressed themselves as vested remaindermen, and not heirs or privies, to their mother Irene's 1/10th interest received from their father Prosper to evade the warranty of title and escape the reach of the estoppel by deed doctrine. (CR at 1178-80) Irene's 1/10th beneficial ownership was cast as nothing more than a life estate, entitled only to income, so that the extent of its sale could be restricted and not preclude Pamela or Thomas from still claiming as remaindermen. (CR at 1184-85) As remaindermen, Pamela and Thomas would now argue that adverse possession

against them did not begin until their mother Irene's death in 2003, and that they were entitled to an ouster. (CR at 1186-88) The Paweleks' request for a special warranty deed was construed as an acknowledgement by Pamela and Thomas. (CR at 1193-94)

Paweleks' sur-reply stressed the language of Prosper's will and explained the nature of Irene's $1/10^{th}$ interest—a life estate with the unfettered power of disposition—can result in the defeat of any remainder in Pamela or Thomas. (1st Supp. CR at 8-11)

## Summary of Argument

Prosper Mika's words (in his will) and Irene Mika's actions (by her deed) haunt their children Pamela Mika Wolf and Thomas Mika's attempts to recover her $1/10^{th}$ property interest seventeen years after his death and ten years after hers. And any potential legal effect of the absence of capacity descriptions in Irene's 1994 deed is made moot by the later absence of any acts of entry, ownership, or possession by Pamela and Thomas in the eighteen years before they filed this suit.

Prosper's will left all of his property to his wife Irene in trust for life with the right to sell or consume all corpus. Their children, Pamela and Thomas, were left the remainder, if any, on Irene's death. Irene, joined by fourteen other Mika grantors, by unambiguous warranty deed conveyed all of her 290.69-acre

Karnes County property to Lucian A. and Carleen J. Pawelek. None of the grantors described their capacities or otherwise described the type or individual or collective sizes of the interests conveyed.

Irene's unambiguous warranty deed prohibits Pamela and Thomas from recovering her prior $1/10^{th}$ trust interest from the Paweleks. And Pamela and Thomas, as heirs of Irene, are estopped from claiming any interest in derogation of their mother Irene's grant. The Paweleks' registered chain of title, payment of taxes, and undisturbed possession from 1994 to 2013 establishes adverse possession title under the three, five, and ten-year statutes. Pamela and Thomas were ousted by their mother Irene's deed and any remainder interests were defeated, regardless of a later severance or acknowledgment.

By filing cross-motions for summary judgment, the parties agree that a trial on title claims is unnecessary and that a resolution should ultimately come from the courts on questions of law. Did Irene really sign the 1994 warranty deed to the Paweleks with her fingers crossed behind her back? Only her children Pamela and Thomas accuse her of doing so. But this appellate record simultaneously vindicates her by quieting title in the Paweleks.

## Argument

### I. Standard of Review

A traditional summary judgment is reviewed de novo. *Mid-Century Ins. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). An appellate court may affirm on any ground presented in the motion. *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). If the summary judgment does not state its grounds, the appellant/non-movant must show that each ground alleged in the motion is insufficient to support the judgment. *Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.).

The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Mgmt Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985).

Although the denial of summary judgment is normally not appealable, an appellate court may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other. *Texas*

*Mun. Power Agency v. Public Utility Comm'n of Texas*, 253 S.W.3d 184, 192 (Tex. 2008); *See Holmes v. Morales,* 924 S.W.2d 920, 922 (Tex.1996). The appellate court will review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Commissioners' Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997).

## II. Unambiguous Warranty Deed

Ambiguity is a question of law. *Dynegy Midstream Servs. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). When construing an unambiguous deed, the intent of the parties thereto is gleaned from harmonizing all of the language therein:

> [t]he construction of an unambiguous deed is a question of law for the court. The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction knows as the "four corners" rule. "That intention when ascertained, prevails over arbitrary rules." The court, when seeking to ascertain the intention of the parties, attempts to harmonize all parts of the deed. "[T]he parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. The court should "not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof."

*Luckel v. White*, 819 S.W.2d 459, 461-62 (Tex. 1991)(citations omitted); *Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983); (CR at 416).

If a grantor "warrants and forever defends" the title conveyed to her grantee, a warranty deed is created. TEX. PROP. CODE ANN. § 5.022 (Vernon 1983). A grantor in a general warranty deed transfers all her interests in the land conveyed to the grantee when no exceptions are stated. *Chapman v. Parks*, 347 S.W.2d 805, 808 (Tex. Civ. App.—Amarillo 1961, writ ref'd n.r.e.).

Pamela and Thomas largely predicated their summary judgment motions on one trespass to try title opinion—*Rogers v. Ricane*, 884 S.W.2d 763 (Tex. 1994). But the rationale in *Rogers* actually favors the Paweleks. In *Rogers*, the two competing chains of title emanated from the actions of a corporate president (Campbell) who by quitclaim assigned an oil and gas lease in his personal capacity only. *Rogers*, 884 S.W.2d at 765. In holding that the president's conveyance in his individual capacity did not convey the interest held by his corporation, the Texas Supreme Court underscored the importance of warranty language:

> Had the 1960 instrument Campbell executed purported to warrant title, then Campbell's conduct might estop his heirs [Rogers] from asserting claims against Ricane as grantees. *See Clark v. Gauntt*, 138 Tex. 558, 161 S.W.2d 270, 271-72 (Tex. 1942). However, as discussed below, because Campbell's conveyance was only by quitclaim and transferred only whatever "right, title and

interest" *he* had in 1960, Campbell's heirs [Rogers] have a claim to their proportionate share of the land in question.

*Rogers*, 884 S.W.2d at 769 n.5. Had the assignment in *Rogers* contained a warranty of title, his heirs would have been estopped to from challenging his conveyance.

Because Irene Mika and her fourteen family members promised to "WARRANT and FOREVER DEFEND" the title granted to the Paweleks, a warranty deed was consummated. Because Irene did not except her $1/10^{th}$ interest received from her husband Prosper, her express warranty conveyed it. Heirs of a grantor can overcome a quitclaim deed (like in *Rogers*), but not a warranty deed (as in this Appeal). Irene's choice to use warranty language then prevents her children from now claiming any interest in the 290.69 Karnes County acreage.

## III. Estoppel by Deed

The doctrine of estoppel by deed is of "universal recognition." *XTO v. Nikolai*, 357 S.W.3d 47, 56 (Tex. App.—Fort Worth, pet. denied) *citing Woldert v. Skelly Oil Co.*, 202 S.W.2d 706, 709 (Tex. Civ. App.—Texarkana 1947, writ ref'd n.r.e.). Estoppel by deed precludes parties from alleging title in derogation of the deed or denying the truth of any material fact asserted in it. *XTO v. Nikolai*, 357 S.W.3d at 47 (*citing Surtees v. Hobson*, 4 S.W.2d 245, 246 (Tex. Civ. App.—El Paso 1928) *aff'd*, 13 S.W.2d 345 (Tex. Comm'n App. 1929)). The doctrine "effectively

closes the mouth of the complainant." *XTO v. Nikolai*, 357 S.W.3d at 47 (*citing*

*Spence v. State Nat'l Bank of El Paso*, 5 S.W.2d 754, 756 (Tex. Comm'n App.

1928)).

In Texas, a grantor under a general warranty deed and her privies are estopped

as against the grantees and those in privity with them to assert any interest in

derogation of the grant. *Duhig v. Peavy-Moore Lumber Co., Inc.*, 135 Tex. 503, 144

S.W.2d 878 (Tex. 1940); *Miles v. Martin*, 321 S.W.2d 62 (Tex. 1959); *Greene v.*

*White*, 137 Tex. 361, 153 S.W.2d 575, 583-85 (1941)(estoppel by deed does not

depend on validity of underlying title). In *Duhig*, a grantor (Duhig) conveyed

his land by general warranty deed (to Miller-Link/Peavey-Moore) and tried to

retain ½ of the minerals. *Duhig*, 144S.W.2d at 505-06. To further describe the

property, the grantor (Duhig) referred to a previous deed in which his

predecessor-in-title (Gilmer) had reserved ½ of the minerals. *Id.* Applying the

estoppel by deed doctrine, the Texas Supreme Court held that the grantor's

(Duhig) reservation of ½ of the minerals referred to the interest previously

retained by his predecessor-in-title (Gilmer), and that the grantor's (Duhig)

warranty required a conveyance of the remaining ½ mineral interest to the

grantee (Miller-Link/Peavey-Moore). To permit otherwise would be to

condone a correctable breach of warranty:

> When the deed is so interpreted the warranty is breached at the
> very time of the execution and delivery of the deed, for the deed
> warrants the title to the surface estate and also to an undivided

one-half interest in the minerals. The result is that the grantor has breached his warranty, but that he has and holds in virtue of the deed containing the warranty the very interest, one-half of the minerals, required to remedy the breach. Such state of facts at once suggest the rule as to after-acquired title, which is thus stated in American Jurisprudence: "it is a general rule, supported by many authorities, that a deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him."

*Duhig*, 144 S.W.2d at 880. The Texas Supreme Court stressed the systemic fairness for its decision:

When one assumes, by his deed, to convey a title, and by any form of assurance obligates himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a title, and turn his grantee over to a suit upon his covenants for redress. The short and effectual method of redress is to deny him the liberty of setting up his after-acquired title as against his previous conveyance. This is merely refusing him the countenance and assistance of the courts in breaking the assurance which his covenants had given.

*Id.* This Appellate Court recently explained that deeds containing "subject to" clauses referring to any valid access restrictions provide notice only, and will not estop grantees from later challenging the validity of such restrictions. *Teal Trading and Development, L.P. v. Champee Springs Ranches Property Owners' Ass'n*, 432

S.W.3d 381, 388-93 (Tex. App.—San Antonio 2014, pet. denied)

(acknowledgment of restriction's recording is not acknowledgment of its

validity). This Appellate Court recommended the use of "subject to" clauses in

warranty deeds:

> When property is conveyed by warranty deeds … it is in the interest of the grantors that the conveyance be made subject to every restriction or encumbrance which not only does apply to such property but also *may* apply. The inclusion of restrictions in the "subject to" clause may thus express a wise precaution on the part of the grantor. It would indeed be foolhardy for a grantor who is delivering a warranty deed to fail to refer to a restriction which may at some time in the future be held to apply to his property, merely to avoid the criticism of excess wordiness. Thus, it is not unusual for conveyances to be made subject to all recorded covenants, easements, and restrictions, without specific enumeration, and it would be inappropriate, to say the least, to infer restrictions because it may subsequently turn out that none then applied to the property.

*Teal Trading*, 432 S.W.3d at 392.

Irene's heirs and privies include her children, Pamela and Thomas, who are

naturally estopped from claiming title in derogation of the Mika-Pawelek

warranty deed, which conveyed all of the 290.69 Karnes County property

without stating it was "subject to" any trust provisions. (CR at 418-21, 814-19)

Irene cannot convey all of her property by warranty and then impliedly reserve

her trust interest. This Appellate Court should not suffer their appeal nor countenance their efforts to breach their mother's warranty.

## IV. Adverse Possession

If a party peaceably and adversely possesses real property under color of title for 3 years without suit by the purported record title owner, such possession can ripen into title by adverse possession. TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021, 16.024 (Vernon 1985). Or if a party is named in a registered deed, and she then for five uninterrupted years cultivates, uses, or enjoys the real property and pays taxes, she will earn an adverse possession title. TEX. CIV. PRAC. & REM. CODE ANN. § 16.025 (Vernon 1985). Ten years of exclusive adverse possession, without more, establishes adverse possession. TEX. CIV. PRAC. & REM. CODE ANN. § 16.026 (Vernon 1989). (CR at 422-35, 820-32, 836-41)

The summary judgment proof was factually undisputed as to the more than ten years of Paweleks' exclusive and uninterrupted possession, chain of registered deeds, and payment of taxes. (CR at 441-762, 850-1171 [deeds, affidavits, tax receipts and cancelled checks, deposition excerpts]) A timeline of relevant dates:

| 18 years | | | | |
|---|---|---|---|---|
| 12/31/1994 | 2/4/2003 | 4/1/2009 | 2/23/2012 | 4/22/2013 |
| Mika-Pawelek deed | Irene Mika dies | Paweleks sign oil & gas lease | Carleen Pawelek telephones Pamela Mika | Pamela & Thomas file suit |

Irene and Thomas instead seek to shorten the Paweleks' eighteen-year adverse possession by any legal theory necessary. First (1st), Pamela and Thomas attack the sufficiency of the Mika-Pawelek deed to convey $1/10^{th}$ interest Irene inherited from Prosper in order to avoid the three-year (color of title) and five-year (registered deed) adverse possession timeframes so that they can face only the ten-year adverse possession statute. Second (2nd), they claim Irene at most only transferred her life estate in the 1994 Mika-Pawelek deed, tolling limitations on their remainder interests until they were entitled to possession on their mother Irene's death in 2003. Third (3rd), they suggest the signing of the 2009 Pawelek oil and gas lease was a severance of the surface and mineral estate. Fourth (4th), they argue that the 2012 telephone call by Carleen was an acknowledgment of title. And fifth (5th), if Pamela and Thomas are correct on either their first or second theory, they characterize themselves as co-tenants with the Paweleks requiring an ouster before any adverse possession periods could commence.

If this Appellate Court indulges Pamela and Thomas on their 1st theory (deed sufficiency) only, the Paweleks nonetheless satisfy the ten-year limitations period (1994 to 2013). If this Appellate Court indulges Pamela and Thomas further and adds theories 3 and 4, (severance & acknowledgement), the Paweleks still establish ten-year limitations title. (1994 to 2009 or 2012)

If instead this Appellate Court accepts the 2nd theory (tolling) only, the Paweleks nonetheless establish ten-year limitations title. (2003 to 2013)

Consequently, Pamela and Thomas must convince this Appellate Court to believe some combination of its five theories to defeat Paweleks' adverse possession claims.

## A. Life Estate + Power of Disposition

Prosper bequeathed Irene a trust interest that permitted her an unlimited power to sell all trust property and unrestricted right to consume all corpus, if in her unquestionable discretion she so desired. (CR at 460, 464) Such life estates can defeat the corresponding remainder:

> Important also is the rule established by the decision in this state and in the great majority of the other states that the added full power of disposition given to the life tenant … does not raise the life estate to a fee. The power of disposition is not an estate. It is merely authority derived … to dispose of the fee. It is not inconsistent with or repugnant to the estate for life. It is not repugnant to the remainder, but when exercised, it defeats the

remainder in the property sold or conveyed … It must be remembered that the devise is express for life with power to dispose of the fee, and it is a well settled principle of law that a power of disposition added to the life estate is not repugnant to the life estate or to the remainder over. If not exercised, it leaves both estates unaffected by it. If exercised, it defeats the remainder in the property disposed; the remainder being subject to such defeat, as in this case.

*Calvert v. Thompson*, 339 S.W.2d 685, 688 (Tex. Civ. App.—Austin 1960, writ ref'd)(*quoting Edds v. Mitchell*, 143 Tex. 307, 184 S.W.2d 823, 825 (1945)). (CR at 812-13; 1st Supp. CR at 10-11) Per the terms of Prosper's will, Pamela and Thomas did not have vested interests until her death in 2003, which was nine years after her deed to the Paweleks in 1994. (CR at 457) Pamela and Thomas's contingent remainders were defeated by Irene's unassailable sale to Pawelek. *Hext v. Price*, 847 S.W.2d 408, 414 (Tex. App.—Amarillo 1993, no writ); *Dickerson v. Keller*, 521 S.W.2d 288, 291 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.).

## B. Late Severance & Acknowledgment

When adverse possession commences before a severance of the mineral estate, the adverse possession includes both the surface and mineral estate. *Rio Bravo Oil Co. v. Staley Oil Co.,* 138 Tex. 198, 158 S.W.2d 293, 295 (1942); *see also McDaniel v. Williams,* 429 S.W.2d 640, 642 (Tex. Civ. App.-Tyler 1968, writ dism'd)("It is a well established rule of law in this state that an adverse entry

upon the surface of land extends downward and includes title to underlying minerals where at time of entry there has been no severance of mineral estate."). Adverse possession commenced prior to limitations will extend to the mineral estate even if the titleholder severs the mineral estate before the limitations period has fully run. *Rio Bravo Oil Co.,* 158 S.W.2d at 295. In contrast, possession of the surface estate that commences after a severance of the mineral estate is not sufficient to constitute adverse possession of the mineral estate. *Natural Gas Pipeline Co. of Am. v. Pool,* 124 S.W.3d 188, 193 (Tex.2003).

An acknowledgment of record title is fatal before adverse possession is effected, innocuous if after. *Santa Fe Energy Operating Partners v. Carrillo*, 948 S.W.2d 780, 786 (Tex. App.—San Antonio 1997, writ denied); *Auchterlonie v. McBride*, 705 S.W.2d 183, 186 (Tex. App.—Houston [14th Dist.] 1985, no pet.); *Wolgamot v. Corley*, 523 S.W.2d 491, 493 (Tex. App.—Waco 1975, writ ref'd n.r.e.). (CR at 432)

A severance in 2009 is too late for 3, 5, and 10-year adverse possession commencing in 1994. And an acknowledgment in 2012 is too late for Pamela and Thomas under the 3, 5, and 10-year adverse possession statutes when the deed from their mother Irene was signed in 1994. Even if tolled until their mother Irene's death in 2003, the 2009 severance and 2012 acknowledgment are still too late under the 3 and 5-year statutes.

## D. Pamela and Thomas were Ousted by Irene's Deed to the Paweleks

Irene ousted Pamela and Thomas by her 1994 deed to the Paweleks:

> It has long been settled in Texas that a conveyance by one cotenant [Irene] to a stranger [Paweleks], or by one or more cotenants to another cotenant, purporting to convey the entire common property, when followed by actual adverse possession, amounts to a desseizin of the non-participating cotenant [Pamela and Thomas]; and record of such conveyance, followed by possession, constitutes notice of the repudiation.

*Republic Prod. Co. v. Lee*, 121 S.W.2d 973, 978 (Tex. 1938); *Strong v. Garrett*, 224 S.W.2d 471, 476 (Tex. 1949); *Jones v. Siler*, 100 S.W.2d 352, 353-54 (Tex. 1937); *Part v. Ratisseau*, 236 S.W.2d 503, 506 (Tex. Civ. App.—San Antonio 1951, writ ref'd n.r.e.); *McCook v. Amarada Petroleum Corp.*, 93 S.W.2d 482, 484 (Tex. Civ. App.—Texarkana 1936, writ dism'd).

Irene's 1994 conveyance to the Paweleks would have worked as an ouster of any possible remaindermen such as Pamela and Thomas. And the Paweleks' adverse possession thereafter for eighteen years would quiet title in them. (CR at 825-26)

## V. Trustees Can Bind Themselves Individually as well as their Beneficiaries

If a widow attempts to convey her deceased husband's one-half community interest in her capacity as his administratrix after his estate is closed, she will

instead be treated as transferring her own one-half community interest held individually. *Williams v. Hardie*, 85 Tex. 499, 22 S.W. 399 (1893). Similarly, if a widow distributes property by partition to her husband's heirs and then by deed as executrix conveys that same property, she will effect a transfer of her individually owned interest in such property. *Parks v. Knox*, 61 Tex. Civ. App. 493, 130 S.W. 203, 209 (1910, no writ). If a trustee for a theater with the power of sale signs a sales contract for an encroaching hotel owned by his corporation, a deed from the corporation for the hotel will convey the portion of the overhanging theater. *Crawford v. El Paso Land Improvement Co.*, 201 S.W. 233 (Tex. Civ. App.—El Paso, no writ). (CR at 420, 818)

Beneficiaries claiming property under a trust instrument must accept all trust terms. *Kahle v. Stone*, 95 Tex. 106, 65 S.W. 623 (1901). For example, if a property deed creates a trust in favor of three beneficiaries and at the same time gives the trustee the power of sale, then the beneficiaries cannot recover against the trustee's grantee to whom the property is sold. *Kahle*, 65 S.W. at 624, 625. Adverse possession against a trustee will engraft on her beneficiaries. *Broussard Trust v. Perryman*, 134 S.W.2d 308, 313-14 (Tex. Civ. App.—1939, writ ref'd). (CR at 435)

Irene's unconditional signature on her family deed to the Paweleks conveyed her complete ownership in all capacities: $1/10^{th}$ in trust, received from her husband Prosper and $1/6^{th}$ individually, received from her mother-in-law Mary.

Pamela and Thomas cannot dispute their mother Irene's right to sell without disputing their own right to ownership. The Paweleks adverse possession against Irene is inherited by her children Pamela and Thomas.

## VI. Limitations

Pamela and Thomas sued the Paweleks sixteen years too late. (CR at 807-10) Section 16.033 of the Texas Civil Practice and Remedies Code, entitled "Technical Defects in Instruments," requires suit on a technical defect in the instrument or acknowledgment to be filed within two years of the recording of the instrument, such as:

> (6) acknowledgment of the instrument in an individual, rather than a representative or official, capacity;

> (7) execution of the instrument by a trustee without record of the authority of the trustee or proof of the facts recited in the instrument.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.033(a)(6),(7),(c)(Vernon 2007). Acknowledgement forms can be altered as circumstances require. TEX. CIV. PRAC. & REM. CODE ANN. § 121.006(a)(Vernon 1985).

Irene signed the 1994 deed to the Paweleks in her individual and trustee capacity. Her capacity status as trustee was established by the earlier recording of her husband Prosper's will and did not need to be restated in the 1994 deed itself. If Pamela and Thomas believe that the 1994 deed should have contained a recital of their mother Irene's status a trustee or attached Prosper's will in

order to convey her $1/10^{th}$ interest, suit should have been brought no later than 1996.

## Prayer

Wherefore, Premises Considered, appellees Lucian A. and Carleen J. Pawelek respectfully request this Appellate Court to affirm the trial court's summary judgment in its favor on all title claims, and that the Court further grant any additional relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

/s/ *Baldemar Garcia Jr.*
Baldemar Garcia Jr.
Texas Bar No. 00790740
email: bgarcia@personwhitworth.com
lead appellate counsel for appellees
Ricardo E. Morales
Texas Bar No. 00794331
email: remorales@personwhitworth.com
PWBM, LLP
602 East Calton Road, 2nd Floor (78041)
P. O. Drawer 6668 (78042)
Laredo, Texas
voice 956.727.4441
facsimile 956.727.2696

## Certificate of compliance

According to the word count feature in Microsoft Word, this brief is 5,643 words, excluding the caption, identities of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. TEX. R. APP. P. 9.4.(i)(15,000 applicable word limit).

/s/ *Baldemar Garcia Jr.*

## Certificate of service

Appellees' file brief was served by electronic mail on all counsel of record on May 14, 2015. TEX. R. APP. P. 9.5.

Michael D. Jones
Leann Pinkerton
Jones Gill, LLP
6363 Woodway, Suite 1100
Houston, Texas 77057
facsimile 713.651.0716
mjones@jonesgill.com
attorneys for appellants

Michael R. Hedges
Goode Casseb Jones Rinklin Choate & Watson, PC
2122 N. Main Avenue
San Antonio, Texas 78212
hedges@goodelaw.com
counsel for appellees

/s/ *Baldemar Garcia Jr.*
Baldemar Garcia Jr.

No. 04-14-00668-CV

West 17th Resources, LLC, Pamela Mika Wolf, and Thomas Mika,
Appellants,

vs.

Lucian A. Pawelek and Carleen J. Pawelek,
Appellees.

## Appendix

1.    Prosper Will

2.    Mika-Pawelek Deed